UNITED STATES of America,
Appellee,

v.

Robert ARTECA and Anthony
E. Russo, Defendants,

Anthony Guidice, Defendant–Appellant.

Docket No. 04–3729–CR.

United States Court of Appeals,
Second Circuit.

Argued: April 1, 2005.

Decided: June 16, 2005.

316

Edward C. O'Callaghan, Assistant United States Attorney for the Southern District of New York (David N. Kelley, United States Attorney, on the brief, Celeste L. Koeleveld, Assistant United States Attorney, of counsel), New York, NY, for Appellee.

Michael Hurwitz, Hurwitz Stampur & Roth, New York, NY, for Defendant–Appellant.

Before: FEINBERG, SACK, and KATZMANN, Circuit Judges.

FEINBERG, Circuit Judge.

Defendant-appellant Anthony Guidice appeals from a judgment of conviction and sentence imposed by the United States District Court for the Southern District of New York (Denise L. Cote, Judge) pursuant to Guidice's plea of guilty to one count of conspiracy to commit extortion. Guidice contends that the district court erred in denying his motion to withdraw his guilty plea after it was discovered that both his attorney and the government had underestimated Guidice's presumptive sentencing range under the United States Sentencing Guidelines. Guidice argues that his counsel at the time of the mistake rendered

ineffective assistance, and that Guidice's motion for withdrawal should have been granted on this basis. Guidice also argues that the district court erred when it applied the Guidelines mandatorily in imposing sentence.

## I. Background

The facts and history of this case are set forth in the opinions of the district court. *United States v. Guidice*, No. 02 Cr. 729(DLC), 2004 WL 1152539, at *1–4 (S.D.N.Y. May 21, 2004); *United States v. Guidice*, 2003 WL 22779263, at *1–2 (S.D.N.Y. Nov.25, 2003). Guidice, along with two co-defendants, was named in a four-count indictment charging two counts of extortion and two counts of conspiracy to commit extortion. These charges arose out of the defendants' alleged efforts on behalf of the Gambino crime family to extort money from clothing manufacturers.

In January 2003, shortly before trial was scheduled to begin, Guidice agreed to plead guilty to one count of conspiracy to commit extortion, 18 U.S.C. § 1951(a). As part of the agreement, the government would "move to dismiss any open Counts" against Guidice. The agreement stipulated that Guidice's applicable Guidelines offense level was 15, and that "[b]ased on the information now available to [the U.S. Attorney's Office]," Guidice's criminal history category was V. Based on these figures, Guidice's presumptive Guidelines sentence would be 37–46 months in prison, and the parties so stipulated. The agreement noted the parties' understanding that "neither the Probation Department nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts," and that "the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Stipulated

Sentencing Guidelines Range of 37 to 46 months."

Guidice pled guilty on January 16, 2003. At the plea hearing, Guidice acknowledged his understanding that the statutory maximum sentence for the offense to which he was pleading guilty was 20 years, that the plea agreement's sentencing calculations were not binding on the court, that his lawyer's prediction of the likely sentencing range might not be correct, and that he could not withdraw his plea even if his sentence differed from what was calculated in the agreement. Guidice also acknowledged his understanding that the district judge would conduct her own sentencing calculation after receiving the pre-sentence investigation report (PSR) from the Probation Department (Probation). Guidice, 2004 WL 1152539, at *2.

After the judge accepted Guidice's guilty plea, but prior to sentencing, Probation submitted a draft of its PSR, which concluded that Guidice should be sentenced as a "career offender" pursuant to § 4B1.1 of the Guidelines. The basis for this conclusion was a 1992 New York State conviction for second-degree assault that Probation found constituted a "crime of violence" under U.S.S.G. § 4B1.1, but which had not been so categorized by defense counsel and the government when calculating the stipulated sentencing range for the plea agreement. This conviction, in the context of Guidice's entire record, qualified him as a career offender. The possibility that Guidice could be sentenced as a career offender had evidently not been presented to him by his lawyer nor indicated in the agreement. Probation's conclusion, which was ultimately determined by both defense counsel and the government to be correct, resulted in an offense level of 29 and a criminal history category of VI. Under this accounting, the presumptive Guidelines

sentencing range would be 151–188 months.

In light of this calculation, defense counsel and the government drafted a new plea agreement that stipulated to a presumptive Guidelines range of 151–188 months, and allowed Guidice to move for a downward departure on the grounds that his criminal history category over-represented the seriousness of his criminal history or the likelihood of recidivism. Guidice, however, rejected the revised plea agreement and instead filed a motion to withdraw his guilty plea. The district court denied this motion, *United States v. Guidice*, 2003 WL 22779263 (S.D.N.Y. Nov.25, 2003), and that denial is not appealed here.

Guidice subsequently requested the appointment of new counsel, and sent the court a letter stating, among other things, that "I recognize that I'm no angel, but twelve or more years [in prison under the PSR calculation] is a death sentence for me." The court granted Guidice's request for the appointment of new counsel, and his new attorney filed a new motion to withdraw the guilty plea. The basis for this second motion to withdraw was that prior counsel had rendered ineffective assistance by inaccurately estimating Guidice's sentencing exposure, resulting in a plea that was invalid because it was neither voluntary nor intelligent.

The district court denied the motion because Guidice had failed to meet the "prejudice" prong of the ineffective assistance test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), by showing that but for counsel's errors he would have gone to trial. *Guidice*, 2004 WL 1152539, at *6. The court expressly found that Guidice's letter stating that a lengthy prison term would be a "death sentence" did "not provide a basis for the Court to conclude that there is a reasonable probability that Guid-

ice would have chosen to go to trial rather than execute the Plea Agreement at the time he was afforded that choice." *Id.* The court noted that Guidice had not provided any other evidence of prejudice, such as an "affidavit representing that he would have chosen to proceed to trial if he had been informed by Prior Counsel that the Draft Plea Agreement likely contained an error," or a recital of "any weaknesses in the government's case that would have influenced his decision to proceed to trial." *Id.* The court further observed that it is "difficult for a defendant who was made aware of the actual sentencing possibilities of a plea to demonstrate that he suffered prejudice as a result of counsel's error." *Id. at* *5. Because Guidice had thus failed to demonstrate prejudice, according to the district court, it was unnecessary to decide whether counsel's representation fell below an objective standard of reasonableness as required under the "performance" prong of *Strickland. Id. at* *6. While the court thus denied Guidice's ineffective assistance claim, it indicated that it would entertain a motion for a downward departure at sentencing. *Id. at* *7.

Guidice asked the court to reconsider its decision, and submitted an affidavit swearing that he "would have proceeded to trial if [he] was advised that [his] guidelines were 151–188 months." At the sentencing hearing in late June 2004, the district court denied the application for reconsideration. It then asked the parties whether they would like to adjourn the sentencing in order to take time to consider the Supreme Court's just-announced decision in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which held a state's guidelines regime unconstitutional and implicitly put in question the constitutionality of the federal guidelines. After both sides said they were prepared to proceed, *Blakely* notwithstanding, the

court determined that the range of 151–188 months recommended in the final version of the PSR (which was identical to that recommended in the draft PSR) was consistent with the Guidelines. On defense counsel's motion, however, the court departed downwardly, based on Guidice's age and poor health, to a 72–month prison term. Judgment was imposed accordingly, and Guidice's timely appeal followed.

## II. Arguments on Appeal

On appeal, Guidice challenges the district court's denial of his motion to withdraw his plea, arguing that ineffective assistance of counsel invalidated the plea, and that the district court erred when it applied the Guidelines mandatorily in imposing sentence. Guidice argues that the court erred when it determined that he was aware of the "actual sentencing possibilities" he faced and thus could not demonstrate prejudice. In fact, Guidice argues, since both defense counsel and the government concurred in calculating his likely sentencing range at 37–46 months, he had every reason to rely on that estimate as set forth in the plea agreement. Guidice contends that the court erroneously identified the prejudice issue as whether Guidice would likely have proceeded to trial if prior counsel had informed him that the agreement contained an error in the calculation of his criminal history level. The relevant prejudice issue, according to Guidice, is whether he would have gone to trial if he had been correctly advised that he was facing a likely sentence not of 37–46 months, but of 151–188 months—approximately four times as long. Guidice further maintains that the court erroneously imposed on him the undue burden of showing weaknesses in the government's case.

Guidice also asserts that *Blakely* invalidated the Guidelines in their entirety, and

that as a result his sentence as a "career offender" pursuant to U.S.S.G. § 4B1.1 is unconstitutional and must be vacated. At oral argument before us (which took place after the Supreme Court's decision in *United States v. Booker*, 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and this court's decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005)), we asked the government whether it would object to our remanding Guidice's case to the district court, pursuant to the procedure set forth in *Crosby*, for a determination of whether resentencing is appropriate. The government responded that it opposed such a remand, noting that the district court had considered all relevant arguments at sentencing and had departed significantly downward from the applicable Guidelines range. Accordingly, the government contends, since the record contains no indication that the district court would reach a different result on remand, the sentence should be affirmed.

## III. Discussion

### A. Motion to Withdraw Plea

A guilty plea is no mere formality, but a "grave and solemn act." *United States v. Hyde*, 520 U.S. 670, 677, 117 S.Ct. 1630, 137 L.Ed.2d 935 (1997) (punctuation omitted). The detailed procedures set forth in Fed.R.Crim.P. 11(b) for the taking of guilty pleas are intended to ensure that such pleas are not "merely tentative." *Id.* at 676, 117 S.Ct. 1630 (punctuation omitted). A district court nonetheless has discretion, pursuant to Fed.R.Crim.P. 11(d), to allow a defendant to withdraw a guilty plea "if there are valid grounds for withdrawal and if granting the motion would be fair and just, giving due regard to any prejudice the government might suffer as a result." *United States v. Couto*, 311 F.3d 179, 185 (2d Cir.2002) (citing *United States v. Maher*, 108 F.3d 1513, 1529 (2d

Cir.1997)). We review a district court's denial of a motion to withdraw a plea for abuse of discretion. *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir.2001). "A district court abuses its discretion if it bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact." *Couto*, 311 F.3d at 185 (citation and internal punctuation omitted).

■ Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea and make granting withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty. *Couto*, 311 F.3d at 187; see *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (holding that the standard for evaluating the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant"). A district court's determination of a claim of ineffective assistance is a mixed question of law and fact and is reviewed de novo. *Couto*, 311 F.3d at 187.

■ A successful claim that counsel rendered ineffective assistance requires an affirmative showing that 1) counsel's performance fell below an objective standard of reasonableness according to prevailing professional norms, and 2) it is reasonably likely that prejudice occurred—i.e., that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–96, 104 S.Ct. 2052. To satisfy the second prong of *Strickland* in the context of plea negotiations, the defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Where, as here, "defendant's specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, ... the issue is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea." *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir.1992) (citing cases) (internal quotation marks omitted).

■ Guidice does not claim he was unaware that the maximum sentence for the offense of conspiracy to commit extortion is 20 years. At the Rule 11 hearing, the district judge explicitly informed Guidice of the statutory maximum for this offense, and Guidice clearly indicated that he nevertheless intended to plead guilty. Nor does Guidice contend that he was misled into believing that the court was constrained by the plea agreement in imposing a sentence. The essence of Guidice's argument is that whatever maximum sentence the court could theoretically have imposed, his "actual sentencing possibilities" did not truly encompass that statutory maximum, because no one had ever suggested to Guidice that the maximum sentence would be imposed. According to this argument, Guidice's "actual sentencing possibilities" are reflected in the presumptive range of 151–188 months recommended by the PSR, which took Guidice's career offender status into account, and Guidice was not timely informed of that range because of the erroneous calculation jointly made by prior counsel and the government. In effect, the statutory maximum was a remote "sentencing possibility" at best; and one that a defendant offered a plea with a likely sentence of 37–46 months would be inclined to discount.

This argument is not insubstantial, as the district court appeared to acknowledge. Guidice, 2004 WL 1152539, at *5–6. At the time of Guidice's sentencing, the

Supreme Court had not yet issued its decision in *Booker* that rendered the Guidelines advisory rather than mandatory. Thus, the applicable Guidelines sentencing range at that time arguably represented Guidice's actual sentencing possibilities more realistically than the statutory maximum did. Guidelines calculations can be exceedingly complex, and prosecutors and defense counsel, owing to their experience within the system, are certainly better situated than most to generate accurate estimates of the Guidelines-based sentencing ranges that a court will apply. An estimate on which both prosecutor and defense counsel agree might be expected to be a particularly reliable indicator of the sentence to be imposed by the court. Moreover, as the district court noted, the error committed by defense counsel and joined in by the government was not merely a "mistaken prediction" of how the Guidelines would be applied, as in *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir.1989) (per curiam), but rather involved "erroneous legal advice about the ultimately knowable," i.e., Guidice's career offender status, as in *United States ex rel. Hill v. Ternullo*, 510 F.2d 844, 847 (2d Cir.1975). We have held that predictive *Sweeney*-type errors do not justify vacating a guilty plea, but that factual misinformation of the kind at issue in *Hill*, to the extent that it renders the decision to plead guilty less than voluntary or intelligent, may provide a basis for withdrawing a plea. *Sweeney*, 878 F.2d at 70; *Hill*, 510 F.2d at 847.

Nevertheless, the district court did not decide whether Guidice knew his actual sentencing possibilities, because it ruled that he did not make a sufficient showing that accurate information would have made a difference in his decision to enter a plea. Guidice, 2004 WL 1152539, at *6; *see Ventura*, 957 F.2d at 1058. We agree. The record does not support a conclusion that had Guidice known earlier that his correct

Guidelines range was 151–188 months, it is reasonably probable that he would have proceeded to trial rather than plead guilty. *See United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir.1997) ("The fact that a defendant has a change of heart prompted by his reevaluation of ... the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea.") (quoting *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir.1992)). *See also United States v. Horne*, 987 F.2d 833, 836 (D.C.Cir.1993) (withdrawal of plea agreement properly refused when defendant showed no intention of going to trial and sought withdrawal "solely in order to strike a better deal with the prosecutor").

This court has not adopted mechanistic rules for determining whether an adequate showing of prejudice has been made, but inquires into the record as a whole to determine whether a reasonable probability exists that absent counsel's error, the outcome of the proceeding would have been different. *See Cuevas v. Henderson*, 801 F.2d 586, 592 (2d Cir.1986) (citing *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052). Here, the record reflects many factors that indicate no such probability. First, Guidice pled guilty even though he knew that the plea agreement's estimate of his applicable Guidelines range might be incorrect, and that in any event the court could impose a sentence outside that range up to the statutory maximum of 20 years. Second, in pleading guilty, Guidice earned a three-level reduction from his base offense level for acceptance of responsibility—a benefit that he would have lost had he gone to trial. Third, Guidice's co-defendants have also pled guilty, and Guidice has not provided any persuasive reason for doubting the strength of the government's case against him. Finally, although the parties do not address this point, we note that in the absence of a plea agreement,

the government would presumably have been free to prosecute Guidice on any open counts against him, possibly resulting in a sentence exceeding even the statutory maximum for the offense to which Guidice pled guilty.

■ It is true that Guidice was understandably distressed at the upward revision of his sentence calculation, and protested that a lengthy incarceration would amount to a "death sentence." When the district court determined that such a statement did not rise to the level of a sufficient showing that he would have gone to trial had he known his true sentencing exposure, Guidice thereupon filed an affidavit swearing for the first time that he would indeed have gone to trial. The district court declined to accept this belated and conclusory statement as proof.

The weight of authority among our sister circuits holds that a self-serving and conclusory statement of this kind is insufficient in itself to show prejudice in the context of guilty pleas. *See, e.g., United States v. Arvanitis,* 902 F.2d 489, 494 (7th Cir.1990); *United States v. LaBonte,* 70 F.3d 1396, 1413 (1st Cir.1995), rev'd on other grounds, 520 U.S. 751, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997); *Parry v. Rosemeyer,* 64 F.3d 110, 118 (3d Cir.1995); *United States v. Gordon,* 4 F.3d 1567, 1571 (10th Cir.1993); *Horne,* 987 F.2d at 836; *Bonvillain v. Blackburn,* 780 F.2d 1248, 1253 (5th Cir.1986). But *see Griffin v. United States,* 330 F.3d 733, 738 (6th Cir. 2003). We do not say that we adopt a per se rule on this point. We hold simply that in considering the record as a whole, we cannot say that the district court erred in ruling that Guidice's affidavit was not sufficient to show that he would have gone to trial but for counsel's error.

Guidice contends that he was subjected to an unduly burdensome standard of proof as to the validity of his guilty plea by requiring him to show weakness in the government's case. This contention lacks merit. The district court did not impose such a requirement, but rather suggested that evidence of weakness in the government's case might have been one means of proving that Guidice would have gone to trial had he known his true sentencing exposure.

Because Guidice did not show that he suffered prejudice from the inaccurate information his lawyer provided, his ineffective assistance claim was properly denied. *See Ventura,* 957 F.2d at 1058. Accordingly, the district court acted within its discretion in refusing to allow Guidice to withdraw his guilty plea.

### B. Sentencing

Guidice initially appealed his sentence on the basis of *Blakely.* After the briefs in this appeal were filed, the Supreme Court decided *Booker,* and this court issued its decision in *Crosby.* Accordingly, we apply these decisions to our disposition of Guidice's appeal.

■ In construing the proper application of *Booker* to cases in which the defendant was sentenced before *Booker* was decided, and in which therefore no *Booker*-based Sixth Amendment objection was raised prior to sentencing, this Circuit has adopted a procedure for determining whether reversible error occurred: If the court hearing the appeal finds that the district court committed a Sixth Amendment or statutory error in imposing a mandatory Guidelines sentence, it should remand the case to that court for a determination of whether resentencing is warranted. *Crosby,* 397 F.3d at 118. Such a statutory error occurs if, among other possibilities, the sentencing court mandatorily applies the Guidelines range when imposing sentence. *Id.* at 114.

The district court here erred in that it understandably appeared to treat the Guidelines as mandatory. Although the court made a significant downward departure from the applicable Guidelines range, we cannot say as a matter of law that the same sentence would have been arrived at had the court regarded the Guidelines as advisory rather than mandatory. We therefore remand to the district court for further proceedings in accordance with *Crosby*.

### IV. Conclusion

For the foregoing reasons, we affirm Guidice's conviction, and remand for further proceedings consistent with this opinion.