In re: Ellen Ducharme, No. S0319-10 CnC (Crawford, J., Feb. 10, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

| SUPERIOR COURT | CIVIL DIVISION |
|---|---|
| Chittenden Unit | Docket No. S0319-10 CnC |

In re: ELLEN DUCHARME

DECISION ON MOTION FOR SUMMARY JUDGMENT

Petitioner Ellen Ducharme is presently serving a sentence of 25 years to life after accepting a plea agreement for second-degree murder. She seeks post-conviction relief pursuant to 13 V.S.A. §§ 7131–7137, generally alleging ineffective assistance of counsel. See Pet'r's Statement of Facts (filed Mar. 16, 2010) (alleging that, because the court had granted a motion to suppress, defense counsel erred in directing her towards a plea agreement, and that counsel delayed filing a notice of mitigating factors, failed to closely examine several mitigating factors, failed to cross examine witnesses, and failed to negotiate a lesser sentence). On November 28, 2011, the State filed a motion for summary judgment, arguing that Ms. Ducharme cannot produce sufficient evidence to prove that counsel's performance was inadequate or that any unprofessional errors prejudiced her defense. Ms. Ducharme, who represents herself, has not filed an opposition.

BACKGROUND

Because petitioner has not filed a statement of facts in opposition to the State's statement, the court takes as true all of the State's proffered facts that are supported in the record. See V.R.C.P. 56(c)(2) (2011 Cum. Supp.) ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); *Webb v. Leclair*, 2007 VT 65, ¶¶ 5–6, 182 Vt. 559 (mem.).[1] The following facts are drawn from the State's statement and from the court's own review of the record.

On July 5, 2004, Ramon Ryans reported to the Burlington Police Department that his girlfriend, Ligia Collins, was missing, and that Ms. Collins had gone to Ms. Ducharme's home at about midnight on July 4. The Burlington police attempted to locate Ms. Ducharme, and she responded by leaving a voicemail message with the police department on July 5, and then agreeing to meet with a detective at the police station on July 7. In the following days, the police investigated the crime and also met with Ms.

---

[1] Effective January 23, 2012, Vermont's Rule 56 has been rewritten to closely mirror the December 2010 amendments of Federal Rule 56. The court is in this case applying the Rule as it read at the time the State's motion was filed on November 28, 2011. In any case, the new Rule 56 also generally requires the opposing party to file a statement in order to dispute facts alleged by the moving party, and permits the court to treat as undisputed a moving party's properly-supported factual assertions when the nonmoving party fails to controvert them.

Ducharme several times. By July 12, the Burlington police had become suspicious of Ms. Ducharme and had begun to keep her under surveillance. At about 1:00 p.m. on July 12, Ms. Ducharme voluntarily appeared at the Burlington police station and spoke with detectives. Ms. Ducharme and the detectives spoke at length, and the conversations gradually became a focused and intense custodial interrogation during which Ms. Ducharme made incriminating statements without having received *Miranda* warnings.[2] She was arrested that night for violating her probation, and arraigned the next day on the VOP charge.

On July 13, 2004, while at the Chittenden County Correctional Facility, she made additional incriminating statements during an interview with a detective and an FBI agent. On July 14, she again made incriminating statements to the detective and FBI agent. Prior to making those statements on July 13 and 14, Ms. Ducharme was advised of and waived her *Miranda* rights. Those waivers were both invalid, however, because they were given under the implied threat of a federal prosecution for a drug-related murder (which carries the death penalty) and implied promises of leniency.

On July 16, while she was at the Dale Correctional Facility, police detectives visited Ms. Ducharme. She initially told them that she had a lawyer and that the lawyer told her not to speak to the police. However, she then voluntarily changed her mind and agreed to talk to them. She was again advised of her *Miranda* rights, gave a valid waiver, and told the detectives that she had initially hit Ms. Collins with a baseball bat, but that while Collins was still alive, Timothy Crews choked Collins with a rag or a towel.

In August 2004, petitioner was charged with the first degree murder of Ligia Collins on July 5, 2004 by striking her repeatedly in the head with a baseball bat. The information alleged a mandatory maximum of life imprisonment and a presumptive minimum of 35 years. Robert W. Katims, Esq. was assigned to defend petitioner.

On April 15, 2005, Attorney Katims filed a motion to suppress the series of statements Ms. Ducharme made to law enforcement officers on July 12, 13, 14, and 16, 2004. The District Court[3] held a hearing on the motion on July 22, 2005, and on January 12, 2006 issued a 29-page opinion granting the motion in part and denying it in part.[4] The court suppressed all statements Ms. Ducharme made on July 12, 2004 after she asked if she could leave the Burlington Police Department for her father's house and until she spoke with the police on July 16, 2004. The court otherwise denied the motion.

---

[2] The court includes this and a few other legal conclusions as undisputed "facts" for present purposes because the District Court reached these conclusions in ruling on the motion to suppress mentioned above. This court is not reviewing the legal conclusions reached by the District Court, but merely presents them here to aid in understanding Ms. Ducharme's claims.

[3] The events in the criminal case occurred prior to the establishment of a unified court system in Vermont, see 2009, No. 154 (Adj. Sess.), so the criminal court was still called the District Court.

[4] The District Court's opinion on the motion to suppress is in Docket No. 4142-8-04 Cncr, and is attached to the State's Motion for Summary Judgment in this case as Exhibit 4.

Although it is not entirely clear from the record, it appears that the State offered a plea deal, and that Attorney Katims recommended that Ms. Ducharme accept. It is undisputed that Ms. Ducharme accepted the plea agreement, and in fact pled guilty to second degree murder at a change-of-plea hearing held on July 26, 2006. At the July 26 hearing, Ms. Ducharme indicated that she was "[v]ery much" satisfied with Attorney Katims' legal advice and representation. Pursuant to the plea agreement, the State would amend the charge from first degree murder to second degree murder, and the parties would go to a contested sentencing hearing before a judge sitting without a jury. At the sentencing hearing, the State would be capped at a sentence of 25 years to life, while Ms. Ducharme would be free to argue for less. The District Court accepted Ms. Ducharme's guilty plea and ordered a presentence investigation (PSI).

On August 8, 2006, the State filed its notice of aggravating factors. The State asserted that intended to prove that: (1) Ms. Ducharme has a prior conviction for aggravated assault; (2) the murder was particularly severe, brutal or cruel; (3) the manner in which the victim's body was dealt with following the murder; and (4) Ms. Ducharme was on probation at the time of the murder. On August 22, 2006, the court set a sentencing hearing for October 24, 2006.

The PSI was filed on October 10, 2006. The PSI recommended a sentence of 25 years to life. On October 13, 2006 the defense filed a motion to continue the October 24 sentencing hearing. The court granted the motion to continue on October 16, and re-set the sentencing hearing for November 28, 2006. On October 20, 2006, defense counsel filed notice of mitigating factors. The defense intended to show that: (1) Ms. Ducharme was suffering from a mental or physical disability or condition that significantly reduced her culpability for the murder; and (2) she suffers from post-traumatic stress disorder (PTSD) due to childhood sexual abuse.

An addendum to the PSI was filed on November 28, 2006. Also on that date, the District Court held an evidentiary hearing on the aggravating and mitigating factors.[5] The State presented testimony from four witnesses: Detective Sean Burke, Sergeant Arthur Cyr, Timothy Crews, and Dr. Stephen Adams. The defense cross-examined each of the State's witnesses. The defense offered one witness, Dr. David Rosmarin, who testified regarding Ms. Ducharme's mental and emotional state at the time of the murder.

On December 6, 2006—following the evidentiary hearing—the District Court issued a seven-page Decision and Order, concluding that the State had proven beyond a reasonable doubt that Ms. Ducharme has a prior felony conviction involving violence to a person and that she committed the murder in a particularly cruel and brutal manner.[6] The court accepted Dr. Rosmarin's opinion that Ms. Ducharme suffers from PTSD, accepted the testimony that she was impaired by cocaine and possibly by other substances at the time of the murder, and accepted Dr. Rosmarin's testimony that PTSD and cocaine abuse

---

[5] The transcript of the November 28 hearing is attached to the State's motion as Exhibit 9.

[6] The District Court's findings and conclusions as to the aggravating and mitigating factors are attached to the State's motion as Exhibit 7.

have a synergistic effect. However, the court also found beyond a reasonable doubt that Ms. Ducharme's mental condition did not reduce her culpability for the crime because "the assault did not emanate from a paranoia-induced argument over a handgun, but rather from the Defendant's desire to steal cocaine from the victim." The District Court concluded that the State had proven that the aggravating factors outweigh the mitigating factors.

On December 12, 2006, the District Court held a second hearing, this time to hear arguments concerning the appropriate sentence for Ms. Ducharme.[7] The State advocated for a sentence of 25 years to life, walking through some of the aggravating factors that the court had found, and arguing Ms. Ducharme had not taken advantage of prior opportunities for rehabilitation or shown any remorse. The State concluded by remarking that the most important consideration for the court was deterrence—that given Ms. Ducharme's history of violence and failure to rehabilitate herself, the court should impose a sentence that would keep the community safe.

The defense characterized Ms. Ducharme as a mother and as someone who had lived a very hard life ever since she was a child, punctuated by sexual abuse, abusive relationships, and a life-long struggle with alcohol abuse and severe drug addiction. Attorney Katims suggested that a 20-year minimum would be sufficient time to achieve the goals of rehabilitation, deterrence, and punishment. He also stated that Ms. Ducharme felt tremendous remorse for what happened, and had expressed that consistently to him. Finally, he read for the court a letter that he said Ms. Ducharme had written and asked him to read by way of allocution.

The court asked Ms. Ducarhme if she had anything else to add, and she indicated that she did not. The court issued its conclusions orally on the record:

> Well, there are many tragic aspects of this case. I, I think I always say that any premature death is tragic, and this one is as well. I'm sure, Ms. Ducharme, that you've le[d] a very difficult life, but there comes a time when everyone needs to take responsibility for their actions. You've had many, many chances over the years, and you've pretty much continued on a downward, destructive path. It's tragic in and of itself, but that's the way it is.
>
> When I was reviewing the evidence presented at the hearing that we had last week, I guess it was the week before, I've lost track, I was thinking that, ironically, although the defense presented evidence in the hopes of establishing mitigating circumstance, it was really, if not an aggravating circumstance, at least a reason why [t]he Court should impose a lengthy sentence.

---

[7] The transcript of the December 12 hearing is attached to the State's motion as Exhibit 10.

> Ms. Ducharme has . . . a long-standing addiction. We heard evidence from her expert witness that one of the consequences or artifacts of, of cocaine use is violence, and to be absolutely candid, I have no confidence that were Ms. Ducharme released in ten years or twenty years, that she would not still have a problem with cocaine and that might lead her to commit additional violent acts. That's the problem I have, and that's the problem, for better or for worse, that Ms. Ducharme is facing. And I think for the protection of the community, I have to impose the lengthiest sentence that I can under the plea agreement. That's the bottom line.

State's Ex. 10, Tr. of Dec. 12, 2006 Sentencing Hr'g 18:7–19:16. The District Court sentenced Ms. Ducharme to 25 years to life.

The court issued an additional statement on December 14, incorporating the December 6 order and including information from the PSI that was not included in the December 6 decision.[8] The PSI included a statement from Ms. Ducharme that she hit the victim because of an argument over a handgun. The District Court found that explanation not to be credible, and reaffirmed its earlier conclusion that Ms. Ducharme struck the victim in order to obtain cocaine from her. The court also noted that the PSI outlines Ms. Ducharme's criminal history, which includes at least 35 prior convictions, and at least seven revocations of probation.

## ANALYSIS

"The two-part standard for evaluating an ineffective-assistance-of-counsel claim is essentially equivalent under the United States and Vermont constitutions." *In re Russo*, 2010 VT 16, ¶ 16, 187 Vt. 367 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984) and *In re Pernicka*, 147 Vt. 180, 182–83 (1986)). "The first prong of this test is an inquiry into the 'reasonable competence [of the lawyer] as measured by the prevailing standards in the conduct of the defendant's case.'" *Id*. (quoting *Pernicka*, 147 Vt. at 182). "The second prong of the test evaluates whether, if counsel's performance did fall below the objective standard, such failure created a 'reasonable probability' that effective counsel would have produced a different outcome." *Id*. (quoting *In re Dunbar*, 162 Vt. 209, 212 (1994)).

The court begins with the first prong of the test, noting that defense counsel is "strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Here, petitioner has not presented any expert testimony supporting any of her claims of ineffective assistance of counsel. That leaves the court to consider whether this is one of those "rare situations" in which ineffective assistance of counsel may be presumed without expert testimony. *In re Barrows*, 2007 VT 9, ¶ 9, 181 Vt. 283 (quoting *In re Grega*, 2003 VT 77, ¶ 16, 175 Vt. 631 (mem.)). The court concludes that it is not. Nothing in the record indicates that Attorney Katims

---

[8] The District Court's December 14, 2006 entry is attached to the State's motion as Exhibit 8.

exercised the sort of lack of care that would be apparent to all. Indeed, Ms. Ducharme herself said that she was "very much" satisfied with Attorney Katims' representation.

Furthermore, even if Attorney Katims' performance did fall below the objective standard, petitioner has not come forward with any evidence that she was prejudiced. The court takes each of Ms. Ducharme's allegations in turn.

First, she contends that Attorney Katims "erred when directing her towards a plea agreement, in light of the fact that a motion to suppress crucial statements had been granted." Pet'r's Statement of Facts ¶ 3 (filed Mar. 16, 2010). She says that she was "not properly counseled as to the effect this would have if taken to trial based on the evidence presented" and that, because she did not understand the "lessened weight of the [S]tate's case," her plea could not have been knowingly and intelligently made pursuant to V.R.Cr.P. 11. *Id.* It is true that "[i]neffective assistance of counsel during plea negotiations can invalidate a guilty plea and make granting withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005). To satisfy the prejudice prong in the context of plea negotiations, Ms. Ducharme "must show that there is a reasonable probability that were it not for counsel's errors, [s]he would not have pled guilty and would have proceeded to trial." *Id.* (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The court concludes that, even with a full explanation of the impacts of the District Court's ruling on the motion to suppress, there was still not a reasonable probability that Ms. Ducharme would not have pled guilty to second degree murder. Even after the ruling, the State still had ample other evidence against her to support the charge, including her statement on July 16 that she hit Ms. Collins with a baseball bat before Crews choked the victim.

Second, petitioner says that defense counsel delayed filing a notice of mitigating factors until October 20, 2006, and that since that was less than 60 days before the November 28, 2006 evidentiary hearing, the filing was not in accordance with 13 V.S.A. § 2303(d)(1)(B).[9] See Pet'r's Statement of Facts ¶ 4. Assuming that is so, there is no indication that her defense was at all prejudiced. Attorney Katims was able to present evidence on the mitigating factors outlined in the October 20 notice, and the District Court considered that evidence.

---

[9] Section 2303(d)(1)(B) provides as follows:

> The parties shall file notice of intent to present evidence regarding specific aggravating and mitigating factors about which the parties have knowledge not less than 60 days before the hearing. A party may not present evidence on the presence of that aggravating or mitigating factor unless notice has been provided as required by this subdivision.

This language—including the 60-day time period—was added effective May 1, 2006. See 2005, No. 119 (Adj. Sess.), §§ 2, 3. The court assumes, without deciding, that this provision "regulate[s] practice in court," 1 V.S.A. § 213, and thus did affect Ms. Ducharme's criminal case.

6

Third, Ms. Ducharme alleges that:

> [T]here were several mitigating factors that should have been closely examined and she was not [sic] prejudiced by counsels failure to investigate such factors in detail, [and] to call on experts. . . . Some of the mitigating factors, such as prescribed medications, alcohol and cocaine and their effects would have needed to be examined by experts and would have required ample amount of time for analysis.

Pet'r's Statement of Facts ¶ 4. Ms. Ducharme "bears the burden of affirmatively showing what the potential evidence would have been and how it would have produced a different result." *In re Dunbar*, 162 Vt. 209, 216 n.* (1994). Here, the defense did introduce evidence of Ms. Ducharme's substance abuse through Dr. Rosmarin in an attempt to establish it as a mitigating factor. See State's Ex. 9, Tr. of Nov. 28, 2006 Sentencing Hr'g 131:18–132:3 (testifying to Ms. Ducharme's substance abuse, the interaction of that abuse with PTSD, and a resulting lifelong disability). Petitioner has not indicated what additional evidence or experts on this topic she thinks should have been introduced, nor has she articulated what other mitigating factors required more examination or what that analysis would have shown. Furthermore, on the specific topic of substance abuse, it seems unlikely that any additional evidence would have made a difference, since the judge concluded that the evidence of Ms. Ducharme's actually supported the imposition of a lengthy sentence.

Petitioner also asserts that Attorney Katims "failed to cross examine witnesses," including Timothy Crews and the State's medical examiner, Dr. Adams. See Pet'r's Statement of Facts ¶ 4. To the contrary, the only evidence in the record is that Attorney Katims did in fact cross-examine both witnesses. See State's Ex. 9, Tr. of Nov. 28, 2006 Sentencing Hr'g 88–103 (cross examination of Mr. Crews); 115–117 (cross examination of Dr. Adams). Moreover, to the extent Ms. Ducharme is arguing that Attorney Katims' cross-examination was inadequate, she has not articulated what additional evidence might have been adduced or how it would have produced a different result. At most, she says that she believes that Mr. Crews was on "FSU" for manslaughter at the time of the killing. Pet'r's Statement of Facts ¶ 4. That evidence came in on direct examination. See State's Ex. 9, Tr. of Nov. 28, 2006 Sentencing Hr'g 65:24–66:4 (Crews testified that he was on furlough in July 2004 for a conviction in the late 1980s for second-degree murder).

Petitioner says that while she was in custody, a marshal came to jail and explained to her that if she would cooperate and bring authorities to where she believed the victim's body was, that would be taken into consideration and she would receive a lesser sentence. Pet'r's Statement of Facts ¶ 4. She seems to argue that this should be a mitigating factor. See *id*. (citing 13 V.S.A. § 2303(f)). Presumably petitioner is referring to the events of July 14 and 15, 2004, when she told Detective Cyr and FBI Special Agent Corbet that she would take them to the area where her boyfriend, Moses Robar, had told her that he would dispose of the body, and accompanied the officers to Lincoln, Vermont while they

7

looked for it. See State's Ex. 4, Ruling on Mot. to Suppress ¶¶ 31–32.[10] The District Court did not specifically discuss Ms. Ducharme's cooperation in its findings of aggravating and mitigating factors, nor does it appear that the defense brought it up. However, the defense's decision to focus on the two mitigating factors mentioned above—and not to discuss Ms. Ducharme's level of cooperation with authorities—may well have been strategic. See *Strickland v. Washington*, 466 U.S. 668, 690–91 (1984) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."). In any case, Ms. Ducharme has not proven that this evidence of her cooperation, even if it had been explicitly raised and discussed, would have altered the District Court's conclusions, especially in light of the substantial aggravating factors the court found.

Petitioner's final argument is that Attorney Katims "failed to negotiate any lesser sentence, despite . . . being free to argue for less." Pet'r's Statement of Facts ¶ 5. Here again, petitioner does not articulate what more she believes Attorney Katims should have done with respect to sentencing. He introduced the mitigating factors he intended to prove, presented evidence of remorse, and argued for a 20-year minimum. The mere fact that his efforts at the sentencing stage did not convince the judge to impose a lesser sentence does not establish ineffective assistance.

This court concludes that Ms. Ducharme cannot produce sufficient evidence to prove that counsel's performance was inadequate or that any unprofessional errors prejudiced her defense. The court will therefore grant the State's motion for summary judgment.

ORDER

The State's motion for summary judgment is granted.

Dated at Burlington this ___ day of February 2012.

_____
Geoffrey W. Crawford
Superior Court Judge

---

[10] The victim's body was not found in Lincoln, but rather in Ripton some time later. It appears that Mr. Crews and Mr. Robar initially brought the body to a location Lincoln that Ms. Ducharme and Mr. Robar had selected, but that Crews convinced Robar to bring the body to another location. See State's Ex. 9, Tr. of Nov. 28, 2006 Sentencing Hr'g 83.

8