23-370
*Margolies v. United States*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of October, two thousand twenty-four.

PRESENT:

> PIERRE N. LEVAL,
> RICHARD J. SULLIVAN,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

_____

WOLFE MARGOLIES,

> *Petitioner-Appellant,*

> v.                                                                              No. 23-370

UNITED STATES OF AMERICA,

> *Respondent-Appellee.*

_____

| | |
|---|---|
| **For Petitioner-Appellant:** | BENJAMIN D. WHITE, Bloch & White LLP, New York, NY. |
| **For Respondent-Appellee:** | ADAM SOWLATI (Nathan Rehn, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Kimba M. Wood, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the January 17, 2023 order of the district court is **VACATED** and **REMANDED**.

Wolfe Margolies appeals from the district court's order denying his motion to vacate his conviction under 28 U.S.C. § 2255, asserting that he received ineffective assistance of counsel with respect to his plea of guilty to a two-count indictment. We assume the parties' familiarity with the underlying facts, procedural history, and issues in dispute, to which we refer only as necessary to resolve this appeal.

In February 2019, Margolies was charged by criminal complaint with one count of conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 84l(b)(l)(C)

and 846 ("Count One"), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2) ("Count Two"). Although the complaint linked one of Margolies's heroin sales to the death of an individual in February 2018, it did not charge him under the enhanced sentencing provision for that offense, which carries a mandatory minimum term of twenty years' imprisonment for distribution where "death . . . results from the use of such substance" (a "Death-Results Charge"). 21 U.S.C. § 841(b)(1)(C). On March 13, 2019, a grand jury returned an indictment charging Margolies with the same two counts contained in the complaint. Margolies later pleaded guilty to both counts pursuant to a plea agreement. As part of that agreement, he stipulated to a base offense level of 38 for Count One, because "the offense of conviction establishe[d] that death . . . resulted from the use of the substance" he distributed, App'x at 56 (citing U.S.S.G. § 2D1.1(a)(2)), and a total Sentencing Guidelines range of 168 to 210 months' imprisonment. The district court ultimately sentenced Margolies principally to 168 months' imprisonment on each count, to run concurrently.

Although Margolies appealed his sentence, we dismissed the appeal as barred by the waiver of appellate rights contained in his plea agreement. He subsequently filed a *pro se* motion seeking to vacate his sentence under section

3

2255, asserting that his trial counsel rendered ineffective assistance with respect to his decision to plead guilty. As to Count One, Margolies contended that his counsel failed to advise him about the proper causation standard that the government needed to meet to prove that a death resulted from his heroin sale, and relatedly, that counsel failed to adequately investigate the factual basis for any death-resulting application.[1] As to Count Two, he asserted that counsel failed to inform him of an affirmative defense – for which he contends he was eligible – available to defendants who possessed fewer than three images of child pornography and "promptly and in good faith . . . took reasonable steps to destroy each such image." 18 U.S.C. § 2252A(d). Margolies represented that, but for counsel's deficient performance, he would have either maintained his not-guilty plea and proceeded to trial, or at the very least pleaded guilty to the indictment without a plea agreement so he could contest the base offense level for Count One

---

[1] To prevail on the statutory Death-Results Charge under section 841, the government must prove that (1) the defendant knowingly or intentionally distributed a controlled substance and (2) that controlled substance was the but-for cause of the decedent's death. *See Burrage v. United States*, 571 U.S. 204, 210, 217–19 (2014). Under this causation requirement, the decedent's death must "'result from' use of the unlawfully distributed drug, not from a combination of factors to which drug use merely contributed." *Id.* at 216; *see also id.* at 207, 218–19 (reversing a conviction where the government could not prove beyond a reasonable doubt that the decedent "would have lived had he not taken the heroin" the defendant sold him). The parties do not dispute that the same but-for causation requirement is applicable to the Guidelines offense level under section 2D1.1(a)(2).

under U.S.S.G. § 2D1.1(a)(2).   The district court denied Margolies's motion without an evidentiary hearing, concluding in principal part that he had failed to demonstrate any deficient performance by counsel.

In the section 2255 context, we review factual findings for clear error and questions of law *de novo*.   *See Thomas v. United States*, 93 F.4th 62, 65 (2d Cir. 2024). The question of whether counsel provided ineffective assistance is a mixed question of law and fact that we review *de novo*.   *See Puglisi v. United States*, 586 F.3d 209, 215 (2d Cir. 2009).   A defendant alleging ineffective assistance of counsel must show that the counsel's performance (1) "fell below an objective standard of reasonableness" under "prevailing professional norms," and (2) was "prejudicial" to his defense, meaning there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Strickland v. Washington*, 466 U.S. 668, 688, 692, 694 (1984).

When a district court declines to hold an evidentiary hearing on a section 2255 motion, we review that decision for abuse of discretion.   *See Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013).   Under section 2255, the district court "shall . . . grant a prompt hearing" "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."   28

5

U.S.C. § 2255(b). Thus, to obtain a hearing, a claimant "need establish only that he has a plausible claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim." *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011) (internal quotation marks omitted). While we have recognized that a "district court may use methods under [s]ection 2255 to expand the record without conducting a full-blown testimonial hearing," *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001), a remand for further factual development is appropriate when the district court summarily dismisses a habeas petition in the absence of a sufficient record, *see Pham v. United States*, 317 F.3d 178, 185 (2d Cir. 2003).

The record before the district court did not support summary denial. "[E]xcept in highly unusual circumstances," a district court facing an ineffective assistance claim should "offer the assertedly ineffective attorney an opportunity to be heard and to present evidence, in the form of live testimony, affidavits, or briefs" that address the assertions of deficient performance. *Sparman v. Edwards*, 154 F.3d 51, 52 (2d Cir. 1998). This is especially true when a defendant's claims "implicate actions taken by counsel outside the presence of the trial judge," *Armienti v. United States*, 234 F.3d 820, 825 (2d Cir. 2000), and "therefore cannot be

determined by examining the motion, files, and records before the district court," *Chang*, 250 F.3d at 85.

Here, the district court never solicited an affidavit or testimony from trial counsel, but instead denied Margolies's motion based on his statements at his guilty plea hearing and information contained in his presentence investigation report ("PSR"). Specifically, as to Count One, the district court concluded that Margolies's plea-hearing statements made clear that he knowingly and intelligently understood the nature and consequences of his plea agreement and allocuted to the death-resulting conduct. But as we have recognized, "counsel's deficient performance" – which, according to Margolies, included his counsel's failure to inform him of the legal basis for, and to investigate the factual basis of, the death-resulting offense level – could "undermine[] the voluntary and intelligent nature of [the] defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005); *see also Missouri v. Frye*, 566 U.S. 134, 141 (2012) (noting that the Supreme Court has "rejected the argument . . . that a knowing and voluntary plea supersedes errors by defense counsel"). That Margolies swore under oath that he understood the consequences of pleading

7

guilty does not squarely foreclose his contentions now that he lacked the legal and factual information pertinent to assessing that plea.[2]

As to Count Two, the district court concluded that counsel's performance was not deficient because Margolies had no viable defense under section 2252A(d), given that the PSR indicated Margolies possessed more than three images of child pornography on his personal devices and there was "no evidence" that Margolies took reasonable steps to destroy those images. Sp. App'x at 9–10. But in fact, the PSR noted that Margolies possessed multiple images of "child *erotica*," *e.g.*, Sealed App'x at 46, 67 (emphasis added), which is not the same as child pornography and is not in fact illegal, *see United States v. Boles*, 914 F.3d 95, 100 (2d Cir. 2019), and the record does not indicate that Margolies possessed any child pornography other than the single video forming the basis of his guilty plea.[3]

---

[2] We disagree with the government's contention on appeal that Margolies did not adequately raise this argument in the district court. While Margolies did not explicitly identify but-for causation in his section 2255 motion, his *pro se* filings – including his supplemental motion for an expert toxicologist, which cites *Burrage* and does discuss but-for causation, *see* App'x at 126 – sufficiently raised the argument that counsel failed to adequately investigate and never informed him of the proper causation standard. The district court also recognized that Margolies's section 2255 motion as to Count One implicated these issues, even though it ultimately rejected them on the grounds that his plea was knowing and voluntary. *See* Sp. App'x at 4.

[3] Although the Sentencing Guidelines commentary explains that a "video" constitutes "75 images" for purposes of sentencing enhancements for child pornography offenses, U.S.S.G. § 2G2.2(b)(7)(a), cmt. n.6(B)(ii), the government does not argue that the same definition applies

Moreover, contrary to the district court's finding, the record *does* contain some evidence that Margolies deleted the video after he received and viewed it.[4]

Absent further factfinding in the district court, the record relevant to an assessment of *Strickland*'s first prong – counsel's deficient performance – is not sufficiently developed on either count. Margolies attests that his counsel did not inform him of the death-resulting causation standard and failed to obtain any scientific or eyewitness evidence necessary to investigate the circumstances of the decedent's death. And save for these contentions, the record is largely devoid of information regarding whether, leading up to Margolies's guilty plea, his counsel made "reasonable investigations" or "ma[de] a reasonable decision that ma[de] particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The parties vigorously dispute, moreover, whether certain statements made by defense

---

to section 2252A(d), which is silent on the subject.

[4] Margolies consistently maintained during the criminal proceedings that he deleted the video after viewing it. *See, e.g.*, App'x at 79 (Margolies's plea colloquy indicating that "[he] subsequently deleted the video"); Sealed App'x at 23 (Margolies's sentencing submission noting that "[a]fter examining the video, [Margolies's] deleted it"); *id.* at 55 (PSR detailing Margolies's account of receiving the video, which indicated that "he was not expecting to see such a video when he clicked on the link" sent to him and "reportedly deleted the video"). And the government represented that the video, which was sent to Margolies on October 25, 2018, was found among materials on his phone that had been deleted as early as October 2018. *See* App'x at 20, 262–63.

counsel during the criminal proceedings indicate that he correctly understood (and adequately informed Margolies of) the death-resulting causation standard, and whether the available facts indicate that Margolies had a plausible affirmative defense on Count Two that his counsel should have considered. Nor can we say, as the government asserts, that the death-resulting evidence against Margolies at the time was so "overwhelming" that any failure to investigate further would have been "objectively reasonable" under the circumstances. *United States v. Patasnik*, 89 F.3d 63, 68 (2d Cir. 1996).[5]

The district court also did not analyze *Strickland*'s second prong – likely prejudice – in any great detail. In the plea context, a defendant must typically demonstrate a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Similarly, in the sentencing context, "the defendant must

---

[5] In support of this argument, the government points to the following evidence: text messages indicating that Margolies sold heroin to the decedent and suggesting, in the government's view, that the decedent did not have an existing heroin supply; the decedent's last outgoing text message, which was to Margolies; the fact that the decedent was found deceased the following day; and a death certificate – signed by a medical examiner who did not examine the decedent's body – indicating that the cause of death was acute heroin intoxication. *See* Gov't Br. at 25–26; *see also* App'x at 129. But as Margolies points out, the government had represented at his bail hearing that, as "confirmed by [a] toxicology report," the decedent had "various heroin" and fentanyl in his system at the time of his death. App'x at 260–61. And the cases cited by the government generally involved more evidence of but-for causation than that identified by the government here.

show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Gonzalez*, 722 F.3d at 130. Here, Margolies attests that, had he received adequate representation from counsel, he would have either: (1) pleaded to the indictment without a plea agreement, in which case he would at least have had the benefit of a *Fatico* hearing to contest any death-resulting base offense level or variance on Count One; or (2) proceeded to trial, holding the government to its burden of proof on a possible Death-Results Charge on Count One and asserting an affirmative defense on Count Two.

On this record, we decline to resolve the prejudice prong, which entails a "case-by-case examination of the totality of the evidence" and "focuses on a defendant's decisionmaking." *Jae Lee v. United States*, 582 U.S. 357, 367 (2017) (internal quotation marks omitted). As a general matter, where counsel's alleged errors are primarily the failure to adequately investigate and the "failure to advise the defendant of a potential affirmative defense," the prejudice inquiry turns in large part on whether the evidence that counsel should have investigated and the affirmative defense "would have changed the outcome of a trial." *Hill*, 474 U.S. at 59. In this case, that inquiry involves some assessment of whether Margolies could have successfully challenged the death-resulting offense level to Count One

11

at sentencing had he pleaded guilty without any agreement, and whether any investigatory efforts undertaken by his counsel would have yielded meaningful exculpatory evidence had the government superseded the indictment and Margolies proceeded to trial on a potential Death-Results Charge under section 841(b)(1)(C). It also requires the district court to evaluate anew whether Margolies could have succeeded in asserting an affirmative defense at trial on Count Two.[6]

The potential sentencing outcomes that Margolies would have faced had he rejected the government's plea offer are also relevant to this inquiry. On the one hand, for example, Margolies would have faced a substantially lower Guidelines range on Count One if he had been permitted to plead guilty without an agreement and the government could not prove by a preponderance of the evidence that the heroin supplied by Margolies was the but-for cause of the decedent's death. The same would have been true if the government had superseded the indictment to add a Death-Results Charge under section 841(b)(1)(C) but failed to prove but-for

---

[6] This, in turn, may require the district court to analyze the meaning of the terms "images," "promptly," "in good faith," and "reasonable steps" as they appear in 18 U.S.C. § 2252A(d), all of which may bear on the district court's assessment not only of likely prejudice, but also of counsel's performance.

12

causation beyond a reasonable doubt at trial or by a preponderance of the evidence at sentencing (assuming a conviction on the conspiracy count). And had Margolies proceeded to trial and succeeded on his affirmative defense to Count Two, he would have avoided the serious consequences that flow from a conviction for a child pornography offense.

On the other hand, Margolies obtained obvious sentencing benefits as a result of his plea agreement. For starters, the plea agreement significantly limited his criminal and sentencing exposure. *See United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005). By pleading guilty to Count One, Margolies faced a maximum term of twenty years' imprisonment on that count – as opposed to a twenty-year mandatory *minimum* sentence and potential *life* sentence had he been charged with and convicted on a Death-Results Charge. *See* 21 U.S.C. § 84l(b)(l)(C). The plea agreement also precluded the government from prosecuting him in the future for any conduct relating to his heroin distribution conspiracy (from December 2017 through January 2019) or child pornography possession (from October 2018 through January 2019). And if Margolies insisted on going to trial, he risked losing the opportunity for a reduction for acceptance of responsibility under the Sentencing Guidelines. *See* U.S.S.G. § 3E1.1; *Arteca*, 411 F.3d at 321. *But see*

13

U.S.S.G. § 3E1.1 cmt. n.2 ("In rare situations[,] a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial.").

In short, the sentencing ramifications of a rejection of the plea agreement are complicated. As a result, we are convinced that these and other considerations regarding whether counsel's purported errors prejudiced Margolies are best resolved by the district court in the first instance, with the benefit of additional factfinding as necessary.

\* \* \*

Ultimately, we conclude that Margolies has done enough to state a plausible claim for relief based on his assertions of ineffective assistance of counsel and that "[t]he record as it presently exists" – with respect to both his counsel's purportedly deficient performance and any prejudice that Margolies suffered as a result – "does not support denial of" his motion. *Pham*, 317 F.3d at 185. We therefore remand for the district court to reevaluate Margolies's claims after further developing the relevant record. Of course, in remanding, we note that "a court deciding an ineffective assistance claim" need not "address both components of

14

the inquiry if the defendant makes an insufficient showing on one." *Strickland*,

466 U.S. at 697. We express no opinion on the merits of Margolies's claims.[7]

For the foregoing reasons, the district court's order is **VACATED**, and the

case is **REMANDED** for further proceedings consistent with this order.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk of Court

---

[7] We reject Margolies's request for the "extraordinary remedy" of reassignment to a new judge on remand. *United States v. Jacobs*, 955 F.2d 7, 10 (2d Cir. 1992) (internal quotation marks omitted). Even if the district judge may have "held erroneous views or made incorrect findings," Margolies has not demonstrated that the judge's fairness, or the appearance of that fairness, "is seriously in doubt." *United States v. Bradley*, 812 F.2d 774, 782 n.9 (2d Cir. 1987).