10-5020-cv
Chhabra v. USA

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2011

(Argued:  January 26, 2012          Decided:  June 20, 2013)

Docket No. 10-5020-cv

_____

VIJAY CHHABRA,

Petitioner-Appellant,

- v. -

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Before:  KEARSE, CABRANES, and SACK, Circuit Judges.

Appeal from a judgment of the United States District Court for the Southern District of New York, Loretta A. Preska, Chief Judge, denying as untimely and without merit a petition for a writ of error coram nobis based on alleged ineffective assistance of counsel in advice given as to the immigration consequences of petitioner's guilty plea.  See 2010 WL 4455822 (Nov. 3, 2010).

Affirmed.

THOMAS E. MOSELEY, Newark, New Jersey,  for Petitioner-appellant.

JASON A. MASIMORE, Assistant United States Attorney, New York, New York (Preet Bharara, United States Attorney for the Southern District of New York, Jesse M. Furman, Assistant United States Attorney, New York, New York, on the brief), for Respondent-Appellee.

IMMIGRANT DEFENSE PROJECT, New York, New York (Manuel D. Vargas, New York, New York; Dani R. James, Craig L. Siegel, Jennifer Diana, Kramer Levin Naftalis & Frankel, New York, New York, of counsel), filed a brief as Amicus Curiae in support of Appellant.

KEARSE, Circuit Judge:

Petitioner Vijay Chhabra, a lawful permanent resident of the United States who was convicted, following his plea of guilty, of one count of receiving Medicare kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(1) and one count of income tax evasion in violation of 26 U.S.C. § 7201, appeals from a judgment of the United States District Court for the Southern District of New York, Loretta A. Preska, Chief Judge, denying his petition for a writ of error coram nobis to vacate his tax evasion conviction on the ground that he received ineffective assistance of counsel in connection with his criminal defense attorney's advice as to the deportation consequences of pleading guilty to that count. The district court, after conducting an evidentiary hearing, ruled that Chhabra's petition was untimely and that Chhabra failed to demonstrate either deficient performance of counsel or prejudice from the alleged advice, see Strickland v. Washington, 466 U.S. 668 (1984). On appeal, Chhabra contends principally that the district court erred (1) in finding his petition untimely, and (2) in failing to find that Chhabra's criminal defense attorney made affirmative misrepresentations to him that prejudiced him in connection with his decision to plead guilty to the tax evasion count. For the reasons that follow, we affirm the district court's denial of the petition for coram nobis.

# I. BACKGROUND

Most of the facts are not in dispute. Chhabra, a national of India, has been a lawful permanent resident of the United States since April 1979 and has been licensed to practice medicine in the State of New York since 1983. In June 1998, he was arrested pursuant to a criminal complaint charging him with one count of receiving and one count of conspiring to receive cash kickbacks from certain providers of medical services and equipment in exchange for referring Medicare patients to those providers, in violation of 42 U.S.C. § 1320a-7b(b)(1) and 18 U.S.C. § 371. In October 1998, Chhabra was indicted on six counts: five counts of receiving Medicare kickbacks and one count of conspiring to do so. Chhabra retained Jeffrey C. Hoffman (or "defense counsel") to represent him and commenced cooperating with the government.

## A. Chhabra's Plea of Guilty and the Specter of Deportation

In June 1999, Chhabra and the United States Attorney's Office for the Southern District of New York ("USAO") entered into a formal agreement ("Plea Agreement" or "Agreement") contemplating that the indictment would be superseded by an information (the "Superseding Information") that would charge Chhabra with one count of receiving Medicare kickbacks from 1988 through 1998, in violation of 42 U.S.C. § 1320a-7b(b)(1), and one count of income tax evasion for the calendar years 1994 through 1997, in violation of 26 U.S.C. § 7201. The government agreed to accept Chhabra's plea of guilty to those charges; Chhabra agreed to file amended tax returns for the years 1994-1997, to pay any past due taxes and penalties, and to cooperate with the government in

3

ongoing investigations. The Agreement stated that as to each count the maximum possible sentence included five years' imprisonment.

The government also agreed that, with respect to the relevant years (1) the USAO would not prosecute Chhabra further in connection with the alleged kickbacks, and (2) subject to the approval of the Tax Division of the United States Department of Justice, neither the USAO nor the Tax Division would prosecute him further for tax evasion. The government further agreed that if Chhabra provided satisfactory cooperation the government would make a motion pursuant to § 5K1.1 of the Sentencing Guidelines ("Guidelines") and ask the court to sentence Chhabra with lenience. The government disclaimed any assurance that Chhabra would receive a particular sentence, and the Agreement repeatedly stated that the sentence to be imposed on him would be "within the sole discretion of the Court." (Plea Agreement at 3.)

The government filed the two-count Superseding Information on July 6, 1999. Count One alleged that from 1989 through 1998, both dates approximate, Chhabra had solicited and received more than $100,000 in illegal cash kickbacks. Count Two alleged that Chhabra had failed to report those kickbacks on his income tax returns for 1994-1997 and had evaded taxes for those years, including $11,650.22 for 1996 and $12,500 for 1997.

On July 6, 1999, Chhabra pleaded guilty to both counts of the Superseding Information before a magistrate judge. During the plea allocution, the magistrate judge reminded Chhabra as to each count that the penalties included a maximum term of "five years imprisonment." (Plea Hearing Transcript, July 6, 1999 ("1999 Plea Tr."), at 4, 5.) Chhabra stated that he understood those potential penalties. (See id. at 5-7.) With respect to Count Two, Chhabra stated, inter alia, that he had failed

4

to pay the correct amount of taxes for each of the years 1994 through 1997, and that he admitted the facts as alleged by the government. (See id. at 9-12.)

The magistrate judge stated that he was satisfied that Chhabra understood the nature of the charges against him and the consequences of pleading guilty and was satisfied that there was a factual basis for the plea; the magistrate judge stated that he would recommend that then-District Judge Denny Chin, to whom the case was assigned, accept Chhabra's plea of guilty. (See 1999 Plea Tr. 12.) As it turned out, the actual acceptance of Chhabra's plea of guilty did not occur until 2003.

In the meantime, Chhabra cooperated with the government pursuant to the Plea Agreement, and the Probation Department prepared a presentence report ("PSR"). In October 2002, Chhabra and Hoffman met with a probation officer; at that meeting, the probation officer stated that Chhabra could be deported because the tax evasion count against him involved a loss of more than $10,000 and thus was an aggravated felony, see generally 8 U.S.C. § 1101(a)(43)(M)(ii). Shortly after that meeting, Hoffman recommended that Chhabra consult David S. Glassman, an attorney specializing in immigration law.

Chhabra consulted Glassman in late 2002 or early 2003. Glassman confirmed that the tax offense to which Chhabra was pleading guilty was an aggravated felony that carried deportation consequences. In connection with the present coram nobis petition, as discussed in Part I.D. below, Chhabra and Glassman have given differing accounts of what additional advice Glassman provided.

5

B.  The PSR and the Acceptance of Chhabra's Guilty Plea

A draft PSR prepared shortly after Chhabra's October 2002 meeting with the probation officer stated, inter alia, that it was possible that the charges of conviction would render Chhabra a deportable alien and that Chhabra was fearful of that possibility and of the possibility that he would lose his medical license.  In a version of the PSR dated January 28, 2003, the Probation Department recommended that the sentence to be imposed on Chhabra include a term of imprisonment.  That PSR noted the Probation Department's belief that Chhabra, upon release from prison, could make a positive contribution to society; but the PSR stated that "that may not occur in the United States as the charges of conviction render Chhabra a deportable alien" (emphasis added).  An amended PSR dated February 14, 2003, stated that the government planned to make a § 5K1.1 motion on Chhabra's behalf and that the Probation Department thus no longer recommended Chhabra's imprisonment.  The amended PSR reiterated, however, that "the charges of conviction render Chhabra a deportable alien."

The proceeding at which Chhabra's guilty plea was accepted, and at which he was sentenced, was eventually held on February 18, 2003.  That hearing had been scheduled for January 2003 but had been postponed after a request by Hoffman for an adjournment, stating in part as follows:

> [T]here is an issue of potential deportation for Dr. Chhabra which is not desired either by the United States Attorney's Office or the defendant.  Toward that end an immigration specialist has been retained who is preparing a memorandum outlining specific findings the Court might make at the time of sentencing which would be helpful to Dr. Chhabra in deportation proceedings.

(Letter from Jeffrey Hoffman to Judge Chin dated January 29, 2003, ("Hoffman January 2003 Letter"), at 1-2 (emphases added).)  No such memorandum was filed; and so far as the record shows,

Chhabra and Hoffman made no further mention of any deportation concerns to the district court until 2009.

The amended PSR, reiterating that "the charges of conviction render Chhabra a deportable alien," was received by Chhabra and the court prior to the February 18, 2003 hearing. At the hearing, Chhabra did not raise any concerns with respect to the prospect of deportation. The district judge accepted Chhabra's plea of guilty, finding that it had an adequate factual basis, and was "made knowingly and voluntarily." (Plea and Sentencing Hearing Transcript, February 18, 2003 ("2003 Plea/Sent'g Tr."), at 3.)

The amended PSR stated that the taxes evaded by Chhabra for the four years in question, based on the figures stated in the Superseding Information, totaled $42,074. As a matter of simple arithmetic, therefore, there must have been at least one year when the evaded taxes exceeded $10,000. When queried by the court, Hoffman stated that the defense had no objections to the PSR. (See id. at 7.)

The district court noted that the Guidelines range for Chhabra's offenses was 15 to 21 months' imprisonment. However, in light of the government's § 5K1.1 motion and representation that Chhabra had provided substantial assistance to the government, the court granted a downward departure and sentenced him principally to five years' probation and a $30,000 fine.

C. The Immigration Proceedings

In 2006, Chhabra traveled to South America, and upon his return to the United States he was detained by immigration officials who discovered his conviction in their database. In July

7

2007, Chhabra received a notice to appear for removal proceedings ("Notice"). It stated that he had been convicted of taking Medicare kickbacks and of income tax evasion, and that, having been convicted of a crime involving moral turpitude, he was removable pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I).

In February 2008, Chhabra, through his current attorney, Thomas E. Moseley, applied for cancellation of removal. Chhabra admitted the Notice's factual allegations but argued that a specific amount of tax loss was not an element of tax evasion and that neither his Plea Agreement nor his plea allocution had specified the amount of tax loss. The government moved to pretermit Chhabra's application because Chhabra had pleaded guilty to an information charging him with evading more than $10,000 in federal income taxes; such a crime is defined as an aggravated felony, see 8 U.S.C. § 1101(a)(43)(M)(ii); and an alien convicted of an aggravated felony is ineligible for cancellation of removal, see 8 U.S.C. § 1229b(a)(3). In August 2008, an Immigration Judge ("IJ") found that the record in Chhabra's criminal case showed that his tax evasion offense was an aggravated felony and ruled that Chhabra was thus ineligible for cancellation of removal and was removable. The Board of Immigration Appeals affirmed that decision in March 2010, and Chhabra's petition for review was denied by this Court in 2011.

D. The Coram Nobis Proceedings

Chhabra filed his present petition for a writ of error coram nobis on February 5, 2009, requesting that his conviction be vacated ("Coram Nobis Petition" or "Petition"). The Petition, verified by Chhabra, stated principally as follows:

8

> Prior to his agreement to plead guilty, Dr. Chhabra was repeatedly advised by his criminal defense counsel that he would not be subject to deportation if he did not receive a prison sentence. The Petitioner relied upon this incorrect advice and would not have entered a guilty plea in the absence of this advice. In addition, at no time prior to Dr. Chhabra's entry of a guilty plea, did his criminal defense counsel investigate or seek to negotiate a guilty plea in which Dr. Chhabra would have entered a plea to [tax evasion] counts with amounts involving a revenue loss of $10,000 or less, whatever might be the amounts determined for sentencing purposes.

> 4. In this connection, the Petitioner's criminal defense counsel did not have Dr. Chhabra consult an immigration attorney until after the Petitioner had entered his guilty plea following the issue of deportation being raised by United States Probation in preparation of the Presentence Report.

(Coram Nobis Petition ¶¶ 3-4 (emphases added).)

The government opposed the Petition, arguing, inter alia, (1) that coram nobis is extraordinary relief that should not be granted to Chhabra in light of the lengthy and unexplained delay from at least late 2002, when Chhabra concededly was aware of the immigration consequences of his plea, to 2009 when he filed the Petition; (2) that the Petition did not allege that Chhabra's expert immigration counsel had failed to advise Chhabra of the consequences of his guilty plea; and (3) that Chhabra did not, after becoming aware of those consequences, attempt to withdraw his plea of guilty before it was accepted by the district court in 2003.

The government also argued that Chhabra could not show that he was prejudiced by any pre-plea ineffective assistance of counsel because he was informed from the outset that he could be sent to prison, and he apparently, according to his own Petition, believed when he pleaded guilty that if he were sentenced to a term of imprisonment he would be subject to deportation. The government argued further that Chhabra likely would not have insisted on proceeding to trial after being advised correctly, given (1) that Chhabra admitted that he in fact committed the crimes to which

9

he pleaded guilty, and (2) that the government would have been able to prove his guilt through documents, live witnesses who had paid kickbacks to Chhabra, and surveillance evidence of Chhabra actually taking kickbacks from government cooperators. The government pointed out that Chhabra received substantial benefits as a result of the Plea Agreement and his cooperation pursuant to the Agreement.

Chhabra filed a reply to the government's opposition, reiterating, inter alia, the assertions made in his Coram Nobis Petition that Hoffman had affirmatively misinformed him that he would not be subject to deportation:

> Throughout my criminal case, my criminal defense counsel repeatedly advised me that I would have no immigration problem if I did not receive a custodial sentence and never departed from this advice. In this connection, he also advised that a sentence of imprisonment was highly unlikely in my case given my cooperation, my service to patients and my family circumstances. My criminal defense attorney referred me to immigration counsel only after my guilty plea before Magistrate Francis and after the issue of deportation had been raised by United States Probation in preparing the Presentence Report in my case. This immigration attorney . . . did not contradict my criminal defense attorney's repeated advice that I would have no immigration problem if I did not receive a custodial sentence. . . . In addition, this immigration attorney did not recommend to me that I seek to withdraw my guilty plea before sentencing. Likewise, my criminal defense attorney did not recommend that I seek to withdraw the guilty plea.
>
> 3. I would not have accepted the guilty plea in this case if I had known that my criminal defense attorney's advice on the immigration consequences of such a plea was wrong and that I would have an immigration problem even if I did not receive a sentence of imprisonment.

(Reply Declaration of Vijay Chhabra dated June 2, 2009 ("Chhabra 2009 Decl."), ¶¶ 2-3 (emphases added).) Chhabra elaborated on various ways in which he would have attempted either to avoid pleading guilty on the tax evasion count or to plead guilty in such a way as to avoid revealing that his

10

tax evasion in any calendar year involved a loss of $10,000 or more. (See id. ¶¶ 3-4.) Chhabra added that

> [t]his petition has not been brought until now because my present attorney has attempted to contest the aggravated felony determination in Immigration Court and on appeal to the Board of Immigration Appeals, which has not yet decided this case.

(Id. ¶ 5.) No explanation was included for the failure to file a petition during the 4½-year period prior to the initiation of removal proceedings.

The government thereafter submitted a sworn affirmation from Glassman and an unsworn affirmation from Hoffman as to their respective advice to Chhabra. Hoffman stated that although he "d[id]n't have any memory of specific conversations with Dr. Chhabra," Hoffman had been "aware of the immigration laws as they pertain[ed] to criminal convictions," and "it was [his] practice to discuss the immigration ramifications resulting from criminal convictions with clients whose immigration status could be effected [sic] by such a condition." (Affirmation (undated) of Jeffrey C. Hoffman filed June 30, 2009 ("Hoffman Aff."), ¶ 5.) Hoffman stated that in January 2003, he had also "recommend[ed] that Dr. Chhabra meet with David Glassman, Esq., an immigration lawyer, for advice concerning any requests we should make of the Court at the time of sentencing that might improve Dr. Chhabra's immigration problems." (Id. ¶ 6.)

Glassman, in his affirmation, stated that he had met with Chhabra in the beginning of 2003 and had received, inter alia, copies of the criminal complaint, the Plea Agreement, and Chhabra's plea allocution before the magistrate judge. In February 2003, Glassman's firm sent Hoffman a report outlining "possible available waivers for Dr. Chhabra based upon his prior plea of an 'aggravated felony' under Immigration Law." (Affirmation of David S. Glassman dated June 10, 2009 ("Glassman

11

Aff."), ¶ 6.) Glassman stated that his firm had reached the

> conclusion, which was discussed with Dr. Chhabra, his wife and his criminal defense attorney, . . . that Section 101(a)(43)(M)(ii) relating to tax evasion and a loss to the government in a sum in excess of $10,000.00 does apply to Dr. Chhabra and would make him removable from the United States and would be difficult to overcome. This would be true even if his ultimate sentence did not include any incarceration.

(Glassman Aff. ¶ 7 (emphases added).) Glassman added that his firm also

> advised Dr. Chhabra not to travel internationally as that might trigger the beginning of removal proceedings upon his return to the United States of America. We further explained to him that if his sentence did not include incarceration, the Department of Homeland Security would not have a detainer on him but that his plea would eventually be entered into a data base which could trigger removal proceedings upon his return to the United States from an overseas trip.

> 9. While I cannot comment on Dr. Chhabra's conversations with his criminal attorney, I can assure the Court that Dr. Chhabra was fully advised of the possible immigration consequences of his guilty plea.

(Id. ¶¶ 8-9 (emphasis added).)

Following the receipt of these declarations and affirmations and various other submissions, the district court scheduled an evidentiary hearing. At the hearing, held on June 19, 2010, the court heard testimony from Chhabra, Chhabra's wife, Hoffman, and Glassman.

Chhabra reiterated the assertions made in his Petition and his reply declaration that Hoffman had repeatedly told him that "if there is no incarceration, there will be no deportation." (Coram Nobis Hearing Transcript, June 19, 2010 ("2010 Coram Nobis Tr."), at 40, 60.) Chhabra testified that he had first become aware of and concerned about the possible deportation consequences in late 2002 when he met with the probation officer who "told me . . . that there could be deportation here, because you have [an] aggravated felony." (Id. at 14-15 (describing October 2002 meeting); see

12

also id. at 53 ("Q. . . . You admit that you became aware of the deportation consequences of your guilty plea at least as early as November 2002, correct? A. Yes, sir." (emphases added)); id. at 45 ("in the month of December, when I heard about this aggravated felony[,] . . . it was bothering me"); id. at 45-46 ("Q. [While you were consulting Hoffman and Glassman,] you were aware, because of . . . having pled guilty to an offense, a tax evasion offense involving more than $10,000, that you were was deportable[?] A. At that time, yes, it was bothering me; sure, sir." (emphases added)).)

Chhabra testified that after the October 2002 meeting with the probation officer, Hoffman told him not to worry because Hoffman would "work it out with the AUSA" to modify the charges so that in no single year would the tax deficiency be as much as $10,000. (2010 Coram Nobis Tr. 15-16.) Chhabra testified that Hoffman referred him to Glassman, and that both Hoffman and Glassman opined to him that, because Chhabra paid his back taxes before being sentenced, there was "no loss to the government" (id. at 19, 44), and that both "kept on saying that they would work it out with AUSA and bring this amount down and you will have no consequences for immigration" (id. at 21).

Chhabra acknowledged that, although he had been concerned as early as late 2002 about the possibility of deportation, had been intercepted by immigration officials upon his return from South America in August 2006, had retained Moseley to represent him in that connection in November 2006, and had been served with the Notice in July 2007 to appear for removal proceedings, Chhabra had taken no steps at any of those times to be relieved of his plea. (See 2010 Coram Nobis Tr. 53-57.) It was not until February 2009, some six months after the IJ's August 2008 decision finding Chhabra removable, that Chhabra commenced the present proceeding for a writ of coram

13

nobis, and he acknowledged that he simply wanted to avoid the effect of the immigration decision (see id. at 57). Chhabra testified that he had no desire to withdraw his plea of guilty on the kickbacks count and that he did not even want to withdraw his plea on the tax evasion count (see id. at 46-47); he acknowledged that he had evaded more than $10,000 in taxes in at least one year (see id. at 49). Chhabra's goal was simply to have "the United States Attorneys Office . . . renegotiate [his] plea, so that [he] can avoid immigration consequences." (Id. at 49.)

Chhabra's wife testified that Hoffman had told her and Chhabra "that if there was no incarceration, then there won't be any immigration consequences." (2010 Coram Nobis Tr. 70.) She testified that Glassman stated that he and Hoffman would get the amount of money involved in the tax evasion count changed, and that Glassman "assured us, he always keep Dr. Chhabra in this country. And that he knew some people, so he won't have any immigration consequences . . . ." (Id.)

Hoffman testified that he did not remember specific conversations with Chhabra, but he testified "I always knew that a felony conviction and potentially even a misdemeanor conviction, could have a serious impact on the immigration prospects of a defendant." (2010 Coram Nobis Tr. 82.) Hoffman stated that a noncustodial sentence could make a "pragmatic" difference because immigration officials were more likely to be aware of a custodial sentence and could lodge a detainer against the defendant to obtain custody of him following the conclusion of his prison term (id. at 83-84); but Hoffman testified, "it was not my understanding that incarceration versus nonincarceration had any legal efficacy in terms of immigration" (id. at 90). Hoffman said that although he did not recall his specific conversations with Chhabra, he "wouldn't have" told Chhabra "that there would be no immigration problem if he was not sentenced to a term of imprisonment." (Id. at 90.)

14

Hoffman testified that after Glassman advised that Chhabra could avoid deportability if the government would agree that the tax loss did not exceed $10,000, Hoffman attempted to persuade the government to agree to a lower loss amount, but his attempt was unsuccessful. (See id. at 92-93.) Hoffman did not advise Chhabra to withdraw his plea of guilty because Chhabra had "told me[, a]nd his wife told me" (id. at 89) that Chhabra's three primary goals were avoiding prison time, avoiding loss of his medical license, and retaining his eligibility to receive payments in the Medicare and Medicaid programs (see id. at 89, 93). Hoffman believed Chhabra had secured as beneficial a bargain as possible and that his chances of success at a trial would be poor. (See id. at 93-94.)

Glassman testified that it had been his understanding of the law that a noncitizen convicted of an aggravated felony would be subject to removal from the United States, and that in Chhabra's case, it would make no difference whether his sentence was custodial or noncustodial. (See 2010 Coram Nobis Tr. 114-16.) Glassman testified, "I told Dr. Chhabra that, in our opinion, he was an aggravated felon, based on the second count to which he pled. And that he would be removable from the United States." (Id. at 116.)

Glassman testified that his firm's research had not turned up "anything under the law at that time that--any defense that Dr. Chhabra would have to removal proceedings." (Id. at 119.) Glassman thus advised Hoffman, and perhaps Chhabra as well, to "try to renegotiate with the U.S. Attorney's Office . . . in some way, Dr. Chhabra's plea so that the amount of [tax] loss . . . would be less than $10,000." (Id.) Glassman also advised Chhabra to avoid traveling outside of the United States, lest his conviction show up on Department of Homeland Security computers upon his attempt to return. (See id. at 116.)

E.  The District Court's Decision

In a Memorandum and Order reported at 2010 WL 4455822 (S.D.N.Y. Nov. 3, 2010), the district court denied Chhabra's petition on the grounds that it was both untimely and without merit. First, the court concluded that Chhabra had failed to demonstrate that there were sound reasons for the six-year delay between his becoming aware that he would be subject to deportation as a result of his guilty plea and his filing of the present Petition. The court noted that "Chhabra was aware of the potential immigration issues prior to . . . Judge Chin's acceptance of his guilty plea in February 2003," but "[d]espite this knowledge, Petitioner made no attempt to withdraw his plea prior to his sentencing when Judge Chin accepted his guilty plea, finding it was made 'knowingly and voluntarily,'" choosing instead "to fly under the radar in an attempt to avoid the immigration consequences of his guilty plea." Id. at *3-*4 (quoting 2003 Plea/Sent'g Tr. 3). And the court noted that when Chhabra eventually was detained by immigration officials in 2006 and ordered in 2007 to appear for removal proceedings, Chhabra chose to "challeng[e] his deportation first through immigration proceedings" and chose not to seek relief from his plea until his efforts in the immigration proceedings failed. 2010 WL 4455822, at *4. The court concluded that neither of Chhabra's chosen strategies was an adequate reason for his delay in seeking judicial relief from his plea. See id.

The district court also ruled that "[e]ven if Petitioner could offer a sound reason for the lengthy delay in bringing the present action, Petitioner has not demonstrated that he was denied the effective assistance of counsel." Id. It

> conclude[d] that, even if defense counsel's initial advice was inaccurate, because Hoffman referred Petitioner to competent immigration counsel who apprised Petitioner of potential removal issues prior to Judge Chin's acceptance of his guilty plea and because Petitioner has admitted that he understood the

16

potential immigration consequences of his guilty plea, defense counsel's actions were objectively reasonable.

Id. at *5.

The court also rejected Chhabra's contention that Hoffman rendered deficient performance by not negotiating a reduction of the amount of tax loss in the charge against Chhabra. Chhabra had presented no evidence to show that negotiating such a reduction was feasible. See id. at *5-*6. And the court found, based on testimony by Hoffman, that Hoffman had made such an attempt but had been unsuccessful. See id. *5.

Finally, the district court ruled that any contention that Hoffman should have advised Chhabra to withdraw his guilty plea would not suffice to support an ineffective-assistance-of-counsel claim because Chhabra could not show that he would have followed that advice. The court noted that at the 2010 coram nobis hearing, Chhabra testified that he does not want to withdraw his plea of guilty and go to trial; he merely wants to be charged with an offense that does not require his deportation. See id. at *6 ("'Q. You . . . want to withdraw your plea to the tax evasion count?  A.  No, sir[,] . . . . because whatever I did wrong, I do want to admit that'" (quoting 2010 Coram Nobis Tr. 46)).  Thus, the court concluded that even if Hoffman's failure to advise Chhabra to seek withdrawal of his plea had constituted deficient performance, Chhabra could not establish that that performance caused him prejudice.

## II. DISCUSSION

On appeal, Chhabra contends principally that the district court erred in ruling (a) that he failed to establish both ineffective performance by defense counsel at critical stages and prejudice as a result, and (b) that his Coram Nobis Petition was unduly delayed. For the reasons that follow, we reject all of Chhabra's contentions.

### A. The Claims of Ineffective Assistance of Counsel

Preliminarily, we note that in the latter stages of the district court proceedings and in the initial stages of the present appeal, Chhabra contended that coram nobis relief was warranted by the March 2010 decision in Padilla v. Kentucky, 130 S. Ct. 1473, in which the Supreme Court ruled that an attorney's failure to advise his noncitizen client of the deportation consequences of a plea of guilty establishes the performance prong of the Strickland standard for a claim of ineffective assistance of counsel, see Padilla, 130 S. Ct. at 1482-83. That contention has now been withdrawn by Chhabra in light of the Supreme Court's decision in Chaidez v. United States, 133 S. Ct. 1103 (2013), holding that the ruling in Padilla is not applicable on collateral review of a conviction that was final when Padilla was decided, see Chaidez, 133 S. Ct. at 1113.

Chhabra contends, however, that this Court's decision in United States v. Couto, 311 F.3d 179 (2d Cir. 2002), entitles him to relief on the ground that defense counsel affirmatively gave him erroneous information. He also argues, inter alia, that defense counsel rendered ineffective assistance by failing to advise him to withdraw his plea of guilty and that the district court erred in refusing to address this claim. These contentions are without merit.

18

A defendant accused of crime has a Sixth Amendment right to effective assistance from his criminal defense attorney at all critical stages in the proceedings, including the entry of a plea of guilty. See, e.g., Hill v. Lockhart, 474 U.S. 52, 58 (1985); see generally Missouri v. Frye, 132 S. Ct. 1399, 1405 (2012). A claim of ineffective assistance of counsel ("IAC") in connection with a plea of guilty is analyzed under the two-pronged test established by Strickland, 466 U.S. 668. See, e.g., Hill, 474 U.S. at 58. For a claimant to meet that test,

> (1) he "must show that counsel's performance was deficient," [Strickland,] 466 U.S. at 687, . . . so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," id. at 690 . . . ; and (2) he must show "that the deficient performance prejudiced the defense," id. at 687, . . . in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694 . . . .

Bennett v. United States, 663 F.3d 71, 84 (2d Cir. 2011) ("Bennett").

"'[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact . . . .'" Bennett, 663 F.3d at 85 (quoting Strickland, 466 U.S. at 698). The district court's "'findings' as to basic, primary, or historical fact 'are subject to the clearly erroneous standard'" of review; the court's ultimate rulings as to Strickland's components, and its ultimate decision as to whether counsel's performance violated the defendant's Sixth Amendment rights, are reviewed de novo. Bennett, 663 F.3d at 85 (quoting Strickland, 466 U.S. at 698). "The IAC claim must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." Bennett, 663 F.3d at 85; see, e.g., Strickland, 466 U.S. at 687, 697.

In the present case, we see no errors in the district court's rulings that Chhabra failed to establish that defense counsel's performance was substandard and failed to establish that but for the claimed advice--or lack of advice--Chhabra would not have pleaded guilty.

19

1. The Advice as to Deportation Consequences

Although Chhabra's principal contention is that his defense counsel advised him that he was not at risk of deportation if he did not receive a sentence that included incarceration, the district court did not find that Chhabra was so advised. See, e.g., 2010 WL 4455822, at *5 & nn.3-4 (referring to "the alleged inaccuracy of Hoffman's advice" (emphasis added) and to the testimony of Hoffman that although he had no current "memory of specific conversations with" Chhabra in 1999, "it was his practice to discuss the immigration ramifications resulting from criminal conviction with potentially affected clients," and that Hoffman "was aware of the [immigration] laws as they pertain[ed] to criminal convictions at that time" (internal quotation marks omitted)). The court instead concluded that Hoffman's performance--even if it had initially included erroneous advice as alleged by Chhabra--was not outside the range of professionally competent assistance. See id. at *5. In so concluding, the court found, to begin with, that, prior to the district court's acceptance of Chhabra's plea of guilty, Hoffman "referred [Chhabra] to David Glassman, Esq., an immigration law specialist, specifically to obtain advice concerning [Chhabra's] potential immigration issues prior to his sentencing." 2010 WL 4455822, at *2; see also id. at *5. This finding is indisputably correct. It is supported by the testimonies of Hoffman and Glassman, as well as that of Chhabra himself, and by the Hoffman January 2003 Letter to Judge Chin. The district court further found that in January 2003, Chhabra followed Hoffman's advice to retain Glassman, see id. at *3; that "Glassman [was] aware that 8 U.S.C. § 1101(a)(43)(M)(ii) included tax evasion in excess of $10,000 as an 'aggravated felony,'" 2010 WL 4455822, at *2; that Glassman "specifically informed [Chhabra] at that time that as an

aggravated felon, [Chhabra] would be removable from the United States," id. at *3; and that Glassman advised Chhabra "that a guilty plea would make him removable even if his ultimate sentence included no incarceration," id. at *2. These findings of historical fact as to what advice Chhabra received and when he received it cannot be termed clearly erroneous; they are amply supported by, inter alia, the sworn declaration and testimony of Glassman, which the district court was entitled to credit. We thus see no error in the court's finding that "Chhabra was aware of the potential immigration issues prior to . . . Judge Chin's acceptance of his guilty plea in February 2003," id. at *3.

Given these factual findings--that Hoffman referred Chhabra to expert immigration counsel, with the result that Chhabra received, prior to the acceptance of his plea, correct legal advice as to the deportation effects that a plea of guilty to the tax evasion count would have--we conclude that even if Chhabra had established that Hoffman initially gave him mistaken immigration advice, the district court did not err in concluding that Hoffman's overall performance with respect to the immigration consequences of Chhabra's plea did not fall below an objective standard of reasonableness.

2. The Lack of Advice To Withdraw the Plea

Chhabra also argues that he received ineffective assistance of counsel because Hoffman failed to advise him to withdraw his plea of guilty, and that the district court erred in refusing to address this claim on the basis that "it [wa]s only raised for the first time in [Chhabra's] Reply Brief. See Thomas v. Roach, 165 F.3d 137, 145-46 (2d Cir.1999) (holding argument first raised in reply brief waived)." 2010 WL 4455822, at *6. Addressing these contentions in reverse order, we conclude that they are without merit.

21

Chhabra cites to nothing in the record to contradict the court's view as to the timing of his assertion of a failure-to-recommend-withdrawal IAC claim. The only documents to which Chhabra refers as supposedly raising this claim prior to his reply brief are his "Proposed Findings Of Fact And Conclusions Of Law" (Chhabra brief on appeal at 29-30), which were filed on July 12, 2010, and an "August 2009" letter filed by his current counsel (id. at 29). Chhabra's reply brief had been filed in June 2009. We see no mention of a failure-to-recommend-withdrawal claim in Chhabra's Coram Nobis Petition or in any document filed prior to his reply memorandum. In any event, although the district court stated that it was not required to address the failure-to-recommend-withdrawal claim, it nonetheless proceeded to address that claim, and it concluded that Chhabra had not established that the lack of such a recommendation caused him any prejudice.

In order to satisfy the prejudice prong of an IAC claim with respect to a plea of guilty, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see also Frye, 132 S. Ct. at 1409; United States v. Couto, 311 F.3d at 187. Where the "defendant's specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty," the prejudice issue is "'whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea.'" United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005) ("Arteca") (quoting Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992)). Factors to be considered by the district court in determining whether a defendant would have decided not to plead guilty and insisted instead on going to trial include (a) whether the defendant pleaded guilty in spite of knowing that the advice on which he claims to have relied might be incorrect, (b) whether pleading guilty gained him a benefit in the form of more lenient

22

sentencing, (c) whether the defendant advanced any basis for doubting the strength of the government's case against him, and (d) whether the government would have been free to prosecute the defendant on counts in addition to those on which he pleaded guilty. See, e.g., Arteca, 411 F.3d at 321-22. See also id. at 321 (noting that a requested "withdrawal of [a] plea agreement [is] properly refused when defendant showed no intention of going to trial and sought withdrawal solely in order to strike a better deal with the prosecutor" (internal quotation marks omitted)).

The district court in the present case found, as discussed in Part II.A.1. above, that Chhabra knew, based on accurate advice of counsel prior to the district judge's acceptance of his plea of guilty, that his plea to the tax evasion count would subject him to deportation, see, e.g., 2010 WL 4455822, at *3. And as discussed below, the court found that Chhabra achieved substantial goals by entering his plea of guilty, see, e.g., id. at *7; that Chhabra admitted the key fact he did not want held against him, i.e., that the amount of tax he evaded exceeded $10,000 in each of at least two years, see id. at *6; see also id. (finding that "Hoffman did speak with the Government about the possibility of allowing Petitioner to plead to a lesser amount, and the Government was not interested"); and that if Chhabra had withdrawn his plea and gone to trial, the government would have been free to prosecute him on additional charges, see id. at *6 n.6. The court concluded that Chhabra did not show that he would have followed a recommendation to withdraw his plea in order to go to trial. It found, rather, that even as of the time of the coram nobis hearing, Chhabra did not want to go to trial but merely "desire[d] to renegotiate his plea deal." 2010 WL 4455822, at *6. Our de novo review of the record confirms that the court did not err.

In making these findings and reaching these conclusions, the court found, inter alia, that Chhabra's priorities in considering a plea agreement were avoiding jail time and preserving his

23

professional livelihood. See id. at \*7. Hoffman testified that he did not recommend that Chhabra withdraw his plea of guilty because "Dr. Chhabra's primary concern throughout my representation of him was to avoid jail. His secondary concern was to keep his license. His third concern was to try and stay within the programs that paid for his patients' fees, in seeing him." (2010 Coram Nobis Tr. 93.) Hoffman knew these were Chhabra's primary concerns "[b]ecause he told me. And his wife told me." (Id. at 89.) Glassman too testified that not going to jail seemed to be the principal concern of Chhabra and his wife. (See id. at 120.) The district court credited this testimony, finding it

> clear that from the very beginning Petitioner had his own priorities when deciding what course of action his counsel should take with regard to a potential plea agreement. First and foremost, Petitioner made it clear that he did not want to go to jail. . . . Second, Petitioner wanted to keep his medical license. Third, Petitioner wanted to remain eligible for programs, such as Medicare, that pay patients' fees. . . . The Court finds that Petitioner received the benefit of his bargain.

2010 WL 4455822, at \*7. These factual findings, based on testimony that the court was entitled to credit, are not clearly erroneous.

The district court's conclusion that Chhabra did not establish that he would have gone to trial if Hoffman had recommended withdrawal of the plea is further supported by its finding that even at the time of the hearing on his Coram Nobis Petition, Chhabra did not actually want to go to trial and, instead, wanted only to have the government agree to a new plea bargain in which Chhabra would not be required to admit having evaded as much as $10,000 in any single year. See, e.g., 2010 WL 4455822, at \*6. This finding too is based on the record. (See, e.g., 2010 Coram Nobis Tr. 47 ("Q. So I take it you are not asking to actually go to trial on the tax evasion count? A. Sir, I--if you can--whatever you can do it for me, I do not want to go to trial now, because whatever has been done." (emphasis ours)).)

24

Although Chhabra testified at one point in the <u>coram nobis</u> hearing that if his motion to vacate his conviction were granted and the government refused to agree to Chhabra's pleading guilty to tax evasion in an amount less than $10,000 in each year, he "would go to trial. I would definitely take a chance" (2010 Coram Nobis Tr. 49-50), the district court plainly found that statement not credible in light of Chhabra's priorities discussed above, and in light of Chhabra's explicit acknowledgement that he had in fact evaded more than $10,000 in each of two years and his other explicit testimony, cited by the court, <u>see</u>, <u>e.g.</u>, 2010 WL 4455822, at *6, that he did not want to withdraw his plea. For example, although at one point Chhabra testified that he believed that "[i]f [he] had gone to trial" he could show that "the revenue loss to the government [was] under $10,000" (2010 Coram Nobis Tr. 25), he acknowledged on cross-examination that in each of at least two years the amount of tax he failed to pay exceeded $10,000:

> Q. Isn't it true that, at least in a couple of the years where you evaded taxes, just in those years by themselves, it's more than $10,000?
>
> A. There were 2 years, sir, which is more than $10,000; yes, sir.
>
> Q. For each year?
>
> A. There are 2 years like that, sir.
>
> Q. And you admit that you evaded taxes for both of those years?
>
> A. I did that, sir. . . .
>
> . . . .
>
> Q. Sir, did you evade tax in any one particular year where the amount you evaded was more than $10,000 of taxes?
>
> A. I did, sir, not knowing the consequences of this aggravated felony prong. But the amount was more than $10,000, so, yes.

25

(Id. at 48-49.) Chhabra testified, "I don't want to not plead guilty to tax evasion. I do want to plead guilty, because whatever I have done wrong, I have done wrong. And that cannot be undone, sir. But my only request to you, is that amount can be plead to less than $10,000 . . . . That's all I'm requesting." (Id. at 53 (emphases added).)

Given the entire record, we see no error in the district court's conclusion that Chhabra failed to establish that, if Hoffman had recommended withdrawal of the plea, Chhabra would have accepted that recommendation in order to go to trial.

B. Timeliness

Finally, we see no abuse of discretion, see Foont v. United States, 93 F.3d 76, 79 (2d Cir. 1996) ("Foont"), in the district court's ruling that Chhabra's Coram Nobis Petition was untimely. A writ of error coram nobis is an extraordinary remedy. To correct a fundamental error, the writ may be issued at a time when the petitioner can no longer be tried or retried for the crime of which he was convicted. But "this extraordinary remedy" should be granted "only under circumstances compelling such action to achieve justice," United States v. Morgan, 346 U.S. 502, 511 (1954); and while a coram nobis petition is "not subject to a specific statute of limitations," Foont, 93 F.3d at 79 (internal quotation marks omitted), it should not be granted unless "sound reasons exist[] for failure to seek appropriate earlier relief," Morgan, 346 U.S. at 512 (emphasis added). Although Chhabra cites cases in which coram nobis petitions were found timely, a "district court considering the timeliness of a petition for a writ of error coram nobis must decide the issue in light of the circumstances of the individual case," Foont, 93 F.3d at 79, and none of the cases cited by Chhabra involved facts paralleling those here.

26

As discussed in Part II.A. above, the district court correctly found, <u>inter alia</u>, that Chhabra had consulted expert immigration counsel in January 2003 and was advised at that time that the tax evasion to which he was pleading guilty was an aggravated felony that, even if he did not receive a sentence that included incarceration, would subject him to deportation. <u>See</u>, <u>e.g.</u>, 2010 WL 4455822 at *3 ("Chhabra was aware of the potential immigration issues prior to the . . . acceptance of his guilty plea in February 2003."). In light of the state of Chhabra's knowledge in 2003--and his ability at that time to inform the district judge that because of his deportation concerns he did not wish to plead guilty--prior to the judge's acceptance of his plea of guilty, we see no abuse of discretion in the court's conclusion that Chhabra's Coram Nobis Petition, which was not filed until 2009, was untimely.

## CONCLUSION

We have considered all of Chhabra's arguments in support of the merit and timeliness of his petition and have found them to be without merit. The judgment of the district court is affirmed.

27