16-3739-cv
*Rodriguez v. United States*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of April, two thousand eighteen.

PRESENT:  JOHN M. WALKER, JR.,
                  GERARD E. LYNCH,
                  DENNY CHIN,
                              *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

CLEOPATRA RODRIGUEZ,

                              *Petitioner-Appellant*,

                    v.                                                          16-3739-cv

UNITED STATES OF AMERICA,

                              *Respondent-Appellee*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PETITIONER-APPELLANT:     MALVINA NATHANSON, New York, New York.

FOR RESPONDENT-APPELLEE:      ANDREW D. BEATY, Assistant United States Attorney (Anna M. Skotko, Assistant United States Attorney, *on the brief*), *for* Geoffrey S.

Berman, United States Attorney for the Southern District of New York, New York, New York.

Appeal from the United States District Court for the Southern District of New York (Preska, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **VACATED** and the case is **REMANDED** for further proceedings**.**

Petitioner-appellant Cleopatra Rodriguez appeals from a memorandum and order entered October 17, 2016, denying her petition for a writ of error *coram nobis* seeking to vacate her guilty plea and conviction. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Rodriguez legally entered the United States in 1994 from the Dominican Republic. In March 2007, she applied for citizenship, and in October 2007, she became a naturalized citizen of the United States. As part of her citizenship application, Rodriguez stated, under penalty of perjury, that she had not committed a crime or offense for which she had not been arrested.

In June 2009, however, Rodriguez was indicted, along with ten others, for crimes arising out of an income tax scheme alleged to have occurred between 2006 and 2008. As part of the scheme, different individuals filed for federal and state tax refunds to which they were not entitled and rented apartments under false names to which the

refunds would be sent.  Rodriguez's alleged role was to cash checks on three separate occasions and to rent an apartment under a false name, for which she received "a little under a thousand dollars" in total.  App. 90.

On January 25, 2010, Rodriquez pleaded guilty to three counts of the indictment:  conspiracy to defraud the United States in violation of 18 U.S.C. § 286, conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349, and conspiracy to commit identification document fraud in violation of 18 U.S.C. § 1028(a)(7) & (f).

At the plea proceeding, the magistrate judge (Ellis, *M.J.*) inquired about Rodriguez's citizenship.  Speaking through an interpreter, Rodriguez stated that she was a citizen of the United States but her counsel immediately -- but incorrectly -- told the court that "she is not a citizen of the United States."  App. 59.  The magistrate judge then warned Rodriguez of the deportation consequences associated with her guilty plea, and asked, "do you understand that by pleading guilty to these charges and because you're not a citizen of the United States . . . you are subject to being deported and that in all likelihood you will be deported?  Do you understand that?"  *Id.* Rodriguez responded, "Yes, sir."  *Id*.

Rodriguez then read a statement, prepared by her lawyer and translated into Spanish, admitting that "[b]etween 2006 and 2008 [she] agreed to help others to defraud" the Government and "[i]n 2007, three different times [she] went to check

cashing places . . . [and] cashed tax refund checks that were not payable to [her]," for which she "was paid $200" each time. App. 68-69. Additionally, Rodriguez admitted that "[i]n early 2007, [she] signed a lease in [her] name for an apartment for one of the persons involved in this scheme . . . [and] knew that the person was going to use it as one of the locations where tax refund checks generated as a result of the [scheme] were going to be sent." App. 69.[1] The magistrate judge recommended that the district court accept Rodriguez's guilty plea, and the district court (Baer, *J.*) subsequently did so.

On June 10, 2010, Rodriguez appeared before the district court for sentencing. At sentencing, defense counsel stated, contrary to his earlier representations, that Rodriguez is "a United States citizen, has filed tax returns every year, has paid her taxes, and is in a position of fully documented income here." App. 80. Counsel then requested a below-guidelines sentence, emphasizing Rodriguez's desire to continue working to support her family because she is the "sole basis of financial support for her two infant children . . . as well as both of her parents," and her "family would suffer from severe collateral consequences due to [her] imprisonment." App. 75, 77.

In sentencing Rodriguez, the district court acknowledged that her "culpability . . . was significantly less than most of [the] other defendants," and that it

---

[1] In her affidavit submitted to the district court, Rodriguez represented that during the plea allocution, she told her lawyer off the record that she "was not sure the allocution was correct." App. 27. The lawyer responded that she should follow his instructions. *Id.*

was "taking into consideration [Rodriguez's] clean record, the family problems, . . . the relatively small role that she played [in the scheme], and [ ] her acknowledgment in advance of her arrest as to her guilt." App. 88, 91. Rodriguez was then sentenced to 90 days' imprisonment, significantly below the guidelines range of 21 to 27 months, to be followed by two years' supervised release.

In April 2014, after Rodriguez had completed her sentence and term of supervised release, the Government filed denaturalization proceedings against her in the Eastern District of New York. The denaturalization complaint alleged that Rodriguez was ineligible for naturalization when she applied for citizenship in March 2007, in part because she had committed an unlawful act within the period prior to her application, which adversely reflected on her character. The complaint also alleged that Rodriguez illegally procured her citizenship by willfully mispresenting by omission in her application her prior and ongoing criminal activities.

On September 25, 2014, Rodriguez filed a petition for a writ of error *coram nobis* seeking not only vacatur of the judgment of conviction, but also vacatur of her plea. Rodriguez claimed, as she does on appeal, that prior to the plea allocution, her counsel "assured [her] several times that [she] did not have to worry about the immigration consequences of a plea because [she] was a citizen," and that she "relied on his assurances" in pleading guilty. App. 26. She also argued that a "competent attorney could have negotiated a plea that would not have required her to admit to facts that

would support denaturalization," Appellant's Br. 11-12, and that, for example, had she been properly advised, she would have asked her attorney to seek a plea agreement that would not require her to admit to criminal conduct before October 2007. App. 29. Rodriguez also asserted that had she known of possible immigration consequences, she "would have . . . instructed [counsel] . . . to move to vacate the plea immediately." App. 30. Rodriguez requested a hearing.

On October 17, 2016, the district court denied the petition, without a hearing, and held that Rodriguez failed to establish (1) circumstances compelling *coram nobis* relief because she had not demonstrated that she was prejudiced by her counsel's objectively unreasonable advice because "[t]here is no reason to believe [that] the Government or the Court would have entertained a plea agreement that contradicted the allegations of [the] indictment," App. 165, and (2) that an order vacating her conviction would affect her denaturalization proceedings because Rodriguez's plea allocution would remain an undisputed matter of record, and Rodriguez did not deny the accuracy of the allocution in her *coram nobis* petition. This appeal followed.

## DISCUSSION

This Court "review[s] the judge's ultimate decision to deny the writ [of *coram nobis*] for abuse of discretion," but reviews *de novo* "the question of whether a district judge applied the proper legal standard." *United States v. Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000).

A writ of error *coram nobis* is an "'extraordinary remedy' available only in rare cases." *Kovacs v. United States*, 744 F.3d 44, 54 (2d Cir. 2014) (quoting *United States v. Morgan*, 346 U.S. 502, 511 (1954)). To obtain *coram nobis* relief, a petitioner must demonstrate three factors: (1) "there are circumstances compelling such action to achieve justice," (2) "sound reasons exist [ ] for failure to seek appropriate earlier relief," and (3) "the petitioner continues to suffer legal consequences from [her] conviction that may be remedied by granting of the writ." *Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996) (citations and internal quotation marks omitted) (alteration in original)).

Only the first and third factors are at issue here. As to the first factor, ineffective assistance of counsel is one circumstance that may warrant *coram nobis* relief. *Kovacs*, 744 F.3d at 49 (citing *Chhabra v. United States*, 720 F.3d 395, 406 (2d Cir. 2013)). For an ineffective assistance claim, a defendant (1) "must demonstrate that [her] counsel's performance 'fell below an objective standard of reasonableness in light of prevailing professional norms'" and (2) "affirmatively 'prove prejudice arising from counsel's allegedly deficient representation.'" *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984) (internal quotation marks omitted)).

The district court concluded, and we agree, that Rodriguez's counsel's "alleged advice that she need not worry about immigration consequences . . . [fell] below an objective standard of reasonableness." App. 164. *See Kovacs*, 744 F.3d at 51

("[N]o reasonable jurist could find a defense counsel's affirmative misadvice as to the immigration consequences of a guilty plea to be objectively reasonable."); *Padilla v. Kentucky*, 559 U.S. 356, 365-68 (2010) (holding that deportation is always "a particularly severe 'penalty,'" and the failure by counsel to properly advise client of deportation consequences was constitutionally deficient). Here, counsel's apparent advice to Rodriguez that she did not have to worry about the immigration consequences of a plea ignored the possibility of denaturalization. Accordingly, the question is whether Rodriguez was prejudiced by her counsel's deficient performance.

Whether a defendant is prejudiced requires a "case-by-case examination," *Williams v. Taylor*, 529 U.S. 362, 391 (2000), of the "totality of the evidence," *Strickland*, 466 U.S. at 695. We have previously held that "a defense lawyer's incorrect advice about the immigration consequences of a plea is prejudicial if it is shown that, but for counsel's unprofessional errors, there was a reasonable probability that the petitioner could have negotiated a plea that did not impact immigration status or that he would have litigated an available defense." *Kovacs*, 744 F.3d at 52. To show prejudice, "[t]he petitioner must [also] clearly demonstrate that [she] placed particular emphasis on immigration consequences in deciding whether or not to plead guilty." *Id.* (brackets and internal quotation marks omitted).

On this record, it is not clear whether there was a reasonable probability that counsel could have negotiated a plea that did not impact Rodriguez's immigration

status, and indeed, the record is silent as to whether any such discussions took place or whether counsel even considered the possibility of denaturalization. In *Kovacs*, we determined that the defendant, an Australian national who had become a permanent resident of the United States, "made a showing of prejudice based on his ability to negotiate an alternative plea." 744 F.3d at 53. In that case, Kovacs's counsel submitted a declaration that stated that Kovacs had pleaded guilty to a misprision of felony charge for the sole reason that counsel incorrectly believed the charge would not impair Kovacs's immigration status -- "a view [that was] conveyed to the prosecution" during plea negotiations. *Id.*[2] Rodriguez's prior counsel, however, did not submit an affidavit nor did the district court conduct an evidentiary hearing to determine what happened during plea discussions and negotiations.

Although, unlike in *Kovacs*, there were no statements at Rodriguez's plea hearing clearly demonstrating a "single-minded focus" on avoiding negative immigration consequences, this is not surprising given counsel's alleged early and continued assurances that there were *no* immigration consequences to worry about in her case. *Kovacs*, 744 F.3d at 53; *see also Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

---

[2]    It is certainly plausible that Rodriguez's counsel could have asked the Government to agree not to seek denaturalization or that the Government would have agreed to a charge or more limited factual allocution that would reduce the possibility of denaturalization. *See, e.g.*, *Kovacs*, 744 F.3d at 52 ("[T]he petitioner could have negotiated a plea that did not impact immigration status."); *United States v. Kwan*, 407 F.3d 1005, 1017-18 (9th Cir. 2005), *abrogated in irrelevant part by Padilla*, 559 U.S. at 370 ("Kwan could have gone to trial or renegotiated his plea agreement to avoid deportation.").

Moreover, there clearly was some confusion during the plea allocution as counsel incorrectly stated that Rodriguez was not a citizen. Finally, in her affidavit submitted to the district court, Rodriguez unequivocally stated that, had she been properly advised, she would have insisted that counsel "correct his error at the plea as to [her] citizenship" and "move to vacate the plea immediately." App. 30.

The Supreme Court has recently instructed that judges should look to "contemporaneous evidence to substantiate a defendant's expressed preferences" when a defendant alleges that he would not have pleaded guilty but for an attorney's deficient advice on immigration consequences. *Lee*, 137 S. Ct. at 1967.[3] In *Lee*, the Court particularly emphasized that the defendant had "strong connections to the United States" -- Lee had lived in the United States for nearly three decades, had established two businesses, and was the only family member in the United States who could care for his elderly parents. *Id.* at 1968. Under the circumstances, this left "no reason to doubt the paramount importance [the defendant] placed on avoiding deportation." *Id.*

Here, Rodriguez's counsel repeatedly emphasized at the plea proceeding that Rodriguez's sole concern with respect to a sentence was to ensure that she would be able to continue working in the United States to financially support her family. Additionally, like Lee, Rodriguez had lived in the United States for a long period -- approximately 13 years -- prior to her involvement in the charged conspiracy, worked

---

[3]     *Lee* was decided on June 23, 2017, after the district court's October 27, 2016, decision, and after the parties' briefs were filed in this action.

several jobs, and provided the sole source of income for her family, many of whom had extensive health issues. Therefore, there also is reason to believe that Rodriguez would have placed "paramount importance," *Lee*, 137 S. Ct. at 1968, on avoiding denaturalization had she known that was a possibility. On this record, however, we cannot make that determination.

It also is not clear on this record whether Rodriquez would have proceeded to trial had she known she could face denaturalization, but that certainly is a possibility as Rodriguez stated that she would have asked her lawyer to "vacate the plea immediately" had she been properly advised. App. 30. *See Kwan*, 407 F.3d at 1017-18 ("[B]ut for counsel's deficient performance, there is a reasonable probability that [the defendant] would have moved to withdraw his guilty plea. After withdrawing his plea, [the defendant] could have gone to trial or renegotiated his plea agreement to avoid deportation[,] [or] he could have pled guilty to a lesser charge."). In *Kovacs*, we held that even if the defendant could not negotiate a plea that did not impair his immigration status, Kovacs alternatively demonstrated prejudice because he alleged he would have litigated an available defense. *See Kovacs*, 744 F.3d at 53. At oral argument before this Court, Rodriguez's appellate counsel suggested that Rodriguez also might have decided to proceed to trial had she been accurately informed of the possibility of denaturalization and deportation.

Even assuming Rodriguez might not have had a successful defense to the charges, "preserving the [ ] right to remain in the United States may be more important to the [defendant] than any potential jail sentence." *Lee*, 137 S. Ct. at 1968. In situations "where we are [ ] asking what an individual defendant would have done, the possibility of even a highly improbable result may be pertinent to the extent it would have affected [the defendant's] decisionmaking." *Id.* at 1968. Therefore, "there is more to consider [in the prejudice inquiry] than simply the likelihood of success at trial," and when the "consequences of a conviction after trial and by plea . . . are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive." *Id.* at 1966. On the present record and under the circumstances, we cannot determine whether Rodriguez would have opted to defend against the charges had she known she could be denaturalized.

For all of the reasons above, we remand for the district court to develop a fuller record concerning the issue of prejudice.

The district court also held that Rodriguez is ineligible for *coram nobis* relief because she failed to establish the third factor: that vacating her conviction would "remedy the effect of her denaturalization proceedings." App. 169; *see Foont*, 93 F.3d at 79 (the petitioner must show that the "legal consequences from his conviction . . . may be remedied by granting of the writ").

- 12 -

In evaluating this factor, however, the court did not acknowledge that Rodriguez sought vacatur of not only the judgment of conviction, but also her guilty plea. Rodriguez argues that if the district court were also to vacate her *plea*, the statements she made at the plea allocution could not be used against her, and the foundation for the denaturalization proceeding would disappear. *See* Fed. R. Evid. 410(a)(1), (3) (evidence of a statement made during a guilty plea that is later withdrawn is inadmissible in a civil or criminal case). Indeed, there is support for this argument. *See United States v. Mergen*, No. 06-CR-352, 2010 WL 395974, at \*3 (E.D.N.Y. Feb. 3, 2010) ("As a general rule, statements made by a defendant in connection with . . . [a] withdrawn plea cannot be introduced at trial." (citing Fed. R. Evid. 410)). Moreover, the Government has already "concede[d] that [Rodriguez] has satisfied the . . . third requirement[ ] for obtaining relief," because she "'continues to suffer legal consequences from [her] conviction that may be remedied by granting of the writ.'" App. 126 n.1 (quoting *Foont*, 83 F.3d at 79) (final alteration in original).

Accordingly, we also remand the case for the district court to further develop the factual record as to whether the legal consequences of Rodriguez's conviction -- the basis for the denaturalization proceedings -- would be remedied by granting *coram nobis* relief.

. . .

For the reasons set forth above, we **VACATE** the district court's order and

**REMAND** for further proceedings.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk